ORIGINAL

Pooja Rajaram [241777]
Mark Allen Kleiman [115919]
KLEIMAN RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Telephone: (310) 392-5455
Facsimile: (310) 306-8491
Email: mark@krlaw.us
Email: pooja@krlaw.us

FILED

APR 28 2026

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Attorneys for Plaintiff-Relator
NOELLE JOHNSON, AS SUCCESSOR
TO THE ESTATE OF DONALD JOHNSON

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| In re | Case No. 2:24-bk-19380-BR |
|---|---|
| HAEDEUK YAE, | Chapter 7 |
| Debtor. | **RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF** |
| | Date:    May 12, 2026<br>Time:    10:00 a.m.<br>Place:   Courtroom "1668"<br>         255 E. Temple St.<br>         Los Angeles, CA 90012 |

1

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

Attorneys Kleiman Rajaram, McInnis Law, and Cohr Seglias Pallas Greenhall & Furman, PC., (collectively, "Relators' Counsel"), by the undersigned, respectfully submit this memorandum and the accompanying declarations of Timothy J. McInnis ("McInnis Decl."), Pooja Rajaram ("Rajaram Decl."), Julie A. Grohovsky ("Grohovsky Decl.") and Noelle Johnson ("Johnson Decl."), in response to Sam S. Leslie, Chapter 7 Trustee's ("Trustee") Motion To Approve Compromise With Chromologic, LLC And Naresh Menon And For Ancillary Relief, filed 3/27/2026, Dkt. 35. For the reasons discussed below, the Trustee's motion should be granted in part and denied in part.

## INTRODUCTION

In his motion, the Trustee seeks two forms of relief. First, the Trustee requests approval of a settlement agreement in a False Claims Act *qui tam* action pending in the United States District Court for the Central District of California, *United States of America ex rel. Donald Johnson and Haedeuk Yae v. Chromologic LLC And Naresh Menon*, Case No. 2:24-cv-06749-PA-DMKx (C.D. Cal.), (the "Qui Tam Action"). All interested parties, including the United States government, seek the Bankruptcy Court's approval of the settlement, which calls for the Defendants to pay $500,000 to the United States to fully resolve allegations of fraud against the government's SBIR program (the "Settlement Amount'), of which 28.5% (or $142,500 and known as the "Relators' Share") is to be evenly divided between the two representatives of the original qui tam relators in the action, namely, Noelle Johnson, Successor to the Estate of Donald Johnson (deceased) and Sam S. Leslie, Chapter 7 Trustee of the Bankruptcy Estate of Haedeuk Yae (jointly, "Co-relators"). Since no known person or party objects to approval of the Settlement Amount and the subsequent dismissal of the Qui Tam Action, the Court should approve the Settlement Agreement and allow the District Court the opportunity to review and, if deemed appropriate, to approve it and dismiss the action.

The Settlement Agreement further provides for $490,000 to be paid by Defendants to Relators' Counsel for statutory attorneys' fees and litigation expenses and costs awarded pursuant to 31 U.S.C. § 3730(d)(2) of the False Claims Act (the "Statutory Fees and Costs"). As to this part of the Settlement Agreement, the Trustee asks the Court to disregard the terms and conditions of a retention agreement that the Court pre-approved pursuant to 11 U.S.C. § 328(a) ("Section 328(a)") at

2

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

the time the Trustee retained McInnis Law as special litigation counsel in the Qui Tam Action (the "Qui Tam Action Retainer"), escrow the Statutory Fees and Costs and hold a hearing to allocate these monies in a way contrary to and not contemplated by the Qui Tam Action Retainer. The Trustee claims this is justified because Relators' Counsel committed legal "malpractice" and the amount Relators' Counsel will receive by strict enforcement of the Qui Tam Action Retainer is "obscenely disproportionate" to the Relator's Share that would otherwise be distributed to the bankruptcy estate. As to each of these occurrences, the Trustee contends they were "incapable of being anticipated" at the time the Trustee retained McInnis Law and lead to an "improvident" result, within the meaning of Section 328(a). The argument below shows why the Court should summarily deny this aspect of the Trustee's motion without holding a hearing or requiring any further factual showing.

If the Settlement Agreement is approved and the Qui Tam Action Retainer is given full force and effect (as unilaterally and voluntarily modified by Relators' Counsel), as the undersigned urges, the entire $990,000 recovery under the Settlement Agreement will be allocated as follows:

- United States: $357,500

- Bankruptcy Estate: $47,500

- Johnson Estate: $47,500

- McInnis Law: $306,954 in fees and $65,263 for unreimbursed expenses and costs

- Cohen Seglias, et al.: $94,447 in fees, and

- Kleiman Rajaram: $70,836, in fees.

## ARGUMENT

## Governing Standards

Resolution of the contested aspect of the Trustee's motion is governed by section 328(a) of the Bankruptcy Code. That provision provides, in pertinent part:

> The trustee . . . , with the court's approval, may employ . . . a professional person under section 327[1] . . . . of this title. . . . on any reasonable terms and conditions of

---

[1] Section 327(a) of the Bankruptcy Code authorizes a bankruptcy trustee, with court approval, to "employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . .

3

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

employment, including on a retainer, on an hourly _ _ _ on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a). Section 328(a) establishes a simple and limited "improvident circumstances" standard of review for fixing compensation if a professional is unambiguously appointed under that provision. *Friedman Enters. v. B.U.M Int'l Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000).

Pursuant to Section 328(a), the Bankruptcy Code allows counsel retained by a trustee to rely on any "pre-approved" terms and conditions of a retention agreement with the Trustee in fixing compensation, rather than having the court determine the reasonableness of the fees under Section 330 of the Bankruptcy Code after the conclusion of the engagement. See *Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re Circle K Corp.)*, 279 F.3d 669, 669 (9th Cir. 2001). See also *Weintraub v. Chicago Title Co. Priority Publ. & Posting*, 9 Fed. Appx. 643, 644 (9th Cir. 2001) ("A bankruptcy court may not conduct an 11 U.S.C.S. § 330 inquiry into the reasonableness of fees and the benefit of services to the estate if it unambiguously approved the professional's employment agreement under 11 U.S.C.S. § 328.") (memorandum opinion); *Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 232-33 (2d Cir. 2009) ("These two inquiries are mutually exclusive, as '[t]here is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328.'") (citing and quoting *In re B. U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000)).

The only exception to enforcing the terms and conditions of a retention agreement under Section 328(a) is if the Bankruptcy Court finds that "such terms and conditions prove to have been

_____

. to represent or assist the trustee in carrying out the trustee's duties." 11 U.S.C. § 327(a). This occurred here on May 21, 2025, when the Court issued an order granting Trustee's Application to Retain McInnis Law as Special Litigation Counsel to Trustee. Dkt. 33.

4

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

improvident in light of developments not capable of being　ipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). For purposes of applying Section 328(a), "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions " requires the Bankruptcy Court to conduct a two-part factual inquiry on the limited questions of: (1) what, if any, post-retention developments in the litigation were "not capable of being anticipated" at the time of the retention; and (2) whether any such developments render the terms and conditions of the retention agreement "improvident." *In re Reimers*, 972 F.2d 1127, 1128-29 (9th Cir. 1992). If the court finds there were no developments that were incapable of being anticipated at the time of the retention or if it finds that any such developments did not render the retention agreement improvident, then the court must award fees according to the terms and conditions of the agreement. *Id.* at 1129. See also *Won Ho Song v. Ehrenberg (In re Won Ho Song)*, 359 Fed. Appx. 817, 817 (9th Cir. 2009) (memorandum opinion).

As observed by the Court of Appeals for the Second Circuit:

> Surprisingly few cases have construed [Section 328(a)'s] language, but those that have make it evident that *it is a high hurdle to clear*. According to the Fifth Circuit, section 328(a) requires 'the bankruptcy court . . . [to] determine[] whether developments, which made the approved fee plan improvident, had been incapable of anticipation at the time the award was approved.' See In re Barron, 325 F.3d 690, 693 (5th Cir. 2003). For example, simply because the size and scope of a settlement had not actually been anticipated, it does not follow that it was incapable of anticipation. See id. at 693-94. Similarly, the fact that contingency fees may appear excessive in retrospect is not a ground to reduce them because 'early success by counsel is always a possibility capable of being anticipated.' In re Gilbertson, No. 06-C-610, 2007 U.S. Dist. LEXIS 11734, 2007 WL 433096, at *5 (E.D. Wisc. Feb. 4, 2007).

*Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 234-35 (2d Cir. 2009) (quotations and citations in original) (emphasis added). Moreover, "incapable of being anticipated" is not the same as "not actually anticipated." *Id.* at 235.

By its express language, not only does Section 328(a) "severely constrain" a Bankruptcy Court's power to alter the terms of a retention agreement that it pre-approved, *Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs.,*

5

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

*LLC*), 552 F.3d 228, 232 (2d Cir. 2009), but whether the B⌐ ˙ ⌐ptcy Court even decides to review and alter the terms and conditions of the retention agreement     der Section 328(a) is permissive and not mandatory. See 11 U.S.C. § 328(a) ("the court *may* allow  ompensation different from the compensation provided under [the retention agreement") (emphasis added). See also *In re Amdura Corp.*, 139 B.R. 963, 978 (Bankr. D. Colo. 1992) ("The disallowance of fees is not mandated by section 328(a), which is permissive in tone.").

<u>**The Trustee is Not Entitled to His Requested Ancillary Relief**</u>

The Trustee's contention that Section 328(a) is triggered in two ways is unavailing. First, the Trustee argues that Relator's counsel committed malpractice by not originally including, [2] and later not amending and including, a fraud in the inducement theory of liability in the operative First Amended Complaint ("FAC"). Second, the Trustee argues that the amount of fees, expenses and costs awarded to Relators' Counsel is "obscenely disproportionate" to the Relator's Share allocable to the bankruptcy estate. In both instances, the Trustee maintains, the events were incapable of being foreseen at the time McInnis Law was retained by the Trustee and they each cause the terms and conditions of the Qui Tam Action Retainer to be improvident. For these purported reasons, the Trustee asks the Bankruptcy Court to not compensate Relators' Counsel according to the terms and conditions of the Qui Tam Action Retainer and instead fix the amount of compensation after conducting a fees hearing.

As to the first prong of the Trustees' argument, one cannot say that Relators' Counsel's making and losing a motion to amend the FAC at the close of discovery was incapable of being anticipated at the time the Trustee retained McInnis Law. Nor, can one say that in this instance, the District Court's refusal to allow the FAC to be amended to include a fraud in the inducement theory

---

[2] Since the FAC was filed on September 18, 2024, and thus predated the approval of McInnis Law as Special Counsel on May 21, 2026 by approximately 9 months, the Trustee's attempt to fault Relators' Counsel for not including a fraud in the inducement theory in the FAC *ab initio* is misplaced. The only events and occurrences subject to a Section 328(a) review are ones that post-date the Bankruptcy Court's approval of the retention. See *Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 235 (2d Cir. 2009) (citing and quoting *In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003).

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

of liability causes the terms and conditions of the Qui Tam      on Retainer to be improvident. Moreover, the premise that Relators' counsel committed ma      ctice is unsupported factually, as can be gleaned from a simple chronology of the Qui Tam Action      itigation history.

The basic facts surrounding the attempt to amend the   AC to include a fraud in the inducement theory are set out in the accompanying McInnis Decl. But to summarize them here. This theory was not in the FAC at the time the Trustee retained McInnis Law. McInnis Law never represented to the Trustee before pre-trial motions in limine that Relators' Counsel would attempt to amend the FAC to add this theory and therefore the Trustee did not expect to have this theory available at the time of post-discovery mediation or trial, if mediation failed. The fact that the District Court judge ruled against the theory's inclusion at a final pretrial conference was certainly capable of being anticipated at the time the Bankruptcy Court approved the Trustee's hiring of McInnis Law as Special Litigation Counsel. Additionally, since the fraud in the inducement theory was not in the FAC, which is the operative pleading that the Trustee evaluated at the time it retained McInnis, and was not in the FAC at the time of the mediation or submitted for trial, its absence due to the District Judge's ruling is of no moment. The Trustee was no worse off because of the ruling than he was at the time he retained McInnis Law. Moreover, as shown in the McInnis Decl., Relator's counsel did not even have the necessary factual predicate to allege the fraud in the inducement theory until after the District Court's cut-off date for amending the pleading. Accordingly, one would have to perform impermissible contortions to try to prove that the absence of the theory in the operative version of the FAC was due to legal malpractice.[3]

The Trustee's second prong of its argument is equally unavailing. Contending that Relators' counsel's fees, expenses and costs are grossly disproportionate to the bankruptcy estate's recovery is simply a way of challenging the reasonableness of the compensation. However, a reasonableness

---

[3] Were the Trustee to continue with his malpractice grounds for denying Relators' Counsel their right to compensation as provided for in the Qui Tam Action Retainer, the issue would have to be first be decided at trial, before a jury in the District Court, if Relator's counsel chose this option, and with expert testimony playing a crucial role. Malpractice cannot be determined at a perfunctory fees hearing.

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

inquiry is only permitted in the case of a Section 330 appoi... ...ent. It is not allowed where, as here, the Bankruptcy Court unambiguously pre-approved a retention agreement pursuant to Section 328(a).[4]

Even if the Court were to find the Trustee's allegations of malpractice and disproportionality are potentially colorable and might possibly permit one to disregard the terms and conditions of the Qui Tam Action Retainer, the Court should nevertheless decline to do so under the unique circumstances of this dispute. This dispute emanates from the proposed resolution of a declined False Claims Act case. There, Relators' Counsel were able to secure a substantial recovery for the benefit of the American taxpayers. The fact that the recovery was smaller than Relators and their counsel had hoped, does not in any way diminish the significance of their combined efforts and achievements.

The Trustee's legal authority is unpersuasive. The key decisions the Trustee relies on concern Section 330 appointments, not Section 328(a) ones. *See, e.g., In re Circle K Corp.*, 279 F.3d 1077 (9th Cir. 2001). Or concern neither. *See, e.g., Protective Committee for Independent Stockholders of TNT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968); In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986); *United States v. Alaska National Bank (In re Walsh Construction, Inc.)*, 669 F.2d 1325 (9th Cir. 1982); *In re Carla Leather, Inc.*, 44 B.R. 457 (Bankr. S.D.N.Y. 1984). And the only decision the Trustee cites that concerns a Section 328(a) appointment was resolved by upholding the terms of the retainer *In re Confections by Sandra, Inc.*, 83 B.R. 729 (B.A.P. 9th Cir. 1987). This is precisely the outcome Relators' Counsel is advocating here.

---

[4] Disproportionality is also a futile basis to challenge Relators' Counsel's fees since "reasonableness" under Section 330 is determined by the "lodestar" test in which rates and time expended are scrutinized for reasonableness. *See Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 598 (9th Cir. 2006) ("The customary method for assessing an attorney's fee application in bankruptcy is the 'lodestar,' under which 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services.) Here, Bankruptcy Court pre-approved McInnis Law's hourly rate ($950) and the Trustee makes no mention that Relators' Counsel's incurred attorney time was unreasonable for any reason. But again, to emphasize the dispositive point: the reasonableness test applies only to Section 330 appointments, not Section 328(a) ones, as in the instant case.

8

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

Moreover, the Trustee does not cite a single case supporting his contention that obtaining an adverse ruling in a civil litigation is grounds for altering a retention agreement under Section 328(a), generally. Nor does the Trustee cite any case for the proposition that failing to amend a *qui tam* complaint to include fraud in the inducement as an alternative theory of liability constitutes malpractice and thereby amounts to an unanticipatable development with improvident results under Section 328(a), specifically.

## CONCLUSION

For the reasons set forth above, the Court should approve the Settlement Agreement and permit the Qui Tam Action to be resolved and dismissed. The Court should further deny the Trustee's request for ancillary relief, that is, a fee hearing, and rule summarily that Relators' Counsel are entitled to the contingency fee, statutory fee, and reimbursement for expenses and costs, expressly provided for in the Settlement Agreement and the Qui Tam Action Retainer (as voluntarily amended in the co-relators' favor by Relators' counsel).

Respectfully submitted,

KLEIMAN RAJARAM

By: _____
Pooja Rajaram (SBN 241777)
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
310-392-5455
pooja@krlaw.us

Dated: April 28, 2026

9

**RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

# DECLARATION OF
# TIMOTHY J. MCINNIS

**DECLARATION OF TIMOTHY J. MCINNIS IN PARTIAL SUPPORT OF, AND IN
PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE
WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY
RELIEF**

<u>**DECLARATION OF TIMOTHY J. MCINNIS**</u>

I, Timothy J. McInnis, hereby declare as follows:

1.      I am the sole attorney in the law firm of McInnis Law, 521 Fifth Avenue, 17th Floor, New York, NY 10175, and co-counsel for plaintiff-relator Donald Johnson, who has since been substituted by Noelle Johnson, Successor to the Estate of Donald Johnson (deceased), and was co-counsel for plaintiff-relator Haedeuk Yae, who has since been substituted by Sam S. Leslie, Chapter 7 Trustee of the Bankruptcy Estate of Haedeuk Yae ("Trustee"), in a False Claims Act action commenced under its qui tam provisions, 31 U.S.C. § 3730(b) that is pending in the United States District Court for the Central District of California and captioned *United States of America ex rel. Donald Johnson and Haedeuk Yae v. Chromologic LLC and Naresh Menon*, Case No. 2:24-cv-06749-PA-DMKx (C.D. Cal.), (the "Qui Tam Action"). By U.S. District Court order dated April 14, 2026, I withdrew and was substituted as counsel for the Trustee in the Qui Tam Action by Eric P. Israel, Esq. of Levene, Neale, Bender, Yoo & Golubchik L.L.P.

2.      I submit this declaration in support of the Trustee's motion to approve a compromise with defendants Chromologic, LLC and Naresh Menon (jointly "Defendants") in the Qui Tam Action (the "Proposed Settlement Agreement"), see Part I, below, and in opposition to the Trustee's motion for ancillary relief, namely, a hearing to determine whether any of the relators' attorneys' fees earned by my firm, and current co-counsel Kleiman Rajaram and former co-counsel Cohen Seglias Pallas Greenhall & Furman, PC., and any of the reimbursed costs and expenses incurred by relators' counsel in the Qui Tam Action, should be allocated to the Trustee,

his counsel and accountant, the debtor and the creditors in this bankruptcy proceeding, see Part II, below.

3.     Except where otherwise indicated, I have personal knowledge of the facts contained in this declaration except for those matters that are based upon information and belief, and as to such matters, I believe such matters to be true. If called upon to do so, I could and would testify competently to the matters set forth herein.

## PART I

## FACTORS SUPPORTING APPROVAL OF THE PROPOSED SETTLEMENT

4.     The proposed settlement amount to resolve the legal claims in the Qui Tam Action is $500,000.

5.     This figure was recommended by the court appointed mediator (former U.S. Magistrate Judge Edward A. Infante) following two separate, multi-day mediation sessions in which the Trustee and/or his general bankruptcy counsel was present.

6.     The claims in the Qui Tam Action belong to the United States under the False Claims Act and the government has the authority to approve or disapprove them. In this instance, the U.S. Attorney's Office for the Central District of California was designated by the Department of Justice as the office with approval authority. AUSA Hunter Thomson from that office conveyed to me the government's approval of the Settlement Agreement, including, the settlement amount, relators' share percentage, and statutory fees, expenses and costs provisions.

7.     Co-relators Noelle Johnson and Trustee and Defendants have all executed the Settlement Agreement.

2

8.     On behalf of the Estate of Donald Johnson, Noelle Johnson has filed a declaration asking that the Bankruptcy Court approve the Settlement Agreement and deny the request for ancillary relief.

9.     If the Settlement Agreement is not approved and the Qui Tam Action goes forward in the District Court, the Trustee will likely have to try to retain new special counsel to try the case since McInnis Law and Kleiman Rajaram have been terminated from the representation and substitute counsel Eric P. Israel is not familiar with False Claims Act litigation, as noted in the Trustee's application to hire McInnis Law.

10.    The potential outcome of such a trial remains in doubt. Mr. Johnson's death in early 2026 will likely be a significant factor.

## PART II

### FACTORS SUPPORTING DENIAL OF ANCILLARY RELIEF

#### Engagements, Retainer, Fees, Expenses and Costs

11.    By order dated May 21, 2025, McInnis Law was appointed pursuant to Section 327 of the Bankruptcy Code as special litigation counsel to the Trustee in the Qui Tam Action. See Order of Appointment, Ex. 4. to the Declaration of Sam S. Leslie, dated March 27, 2026, in this proceeding, ("Leslie Decl.").

12.    Neither my current co-counsel Kleiman Rajaram nor my former co-counsel Cohen Seglias Pallas Greenhall & Furman, PC were appointed as special litigation counsel to the Trustee in the Qui Tam Action. *Id.*

13.    McInnis Law's compensation as special litigation counsel to the Trustee is governed by Section 382 of the Bankruptcy Code. See Order of Appointment, Ex. 4 to the Leslie Decl. at ¶ 2, See also Application to Employ McInnis Law as Special Litigation Counsel, dated

3

March 11, 2025, ECF 28 at p. 3 and ¶¶ 11 and 12; and Trustee's instant motion papers dated March 27, 2026, at pp. 2, 8, 10, 17, and 23.

14.     At the Trustee's request, prior to McInnis Law's appointment as special litigation counsel to the Trustee, I filed a supplemental declaration, dated May 1, 2025, stating, among other things, that my hourly rate for this matter and similar legal engagements was $950. See Supplemental Declaration of Timothy J. McInnis, ECF 25. That is also the rate set forth in the Qui Tam Action Retainer.

15.     The terms and conditions of McInnis Law's retention as special litigation counsel to the Trustee are dictated by a retainer agreement executed in February 2021 by the original co-relators in this action and me, subject only to the discretionary provisions of Section 328. See Ex. 2 to the Application to Employ McInnis Law as Special Litigation Counsel, dated March 11, 2025, ECF 28 (the "Qui Tam Action Retainer"), Memorandum of Points and Authorities at ¶¶ 9, 11 and 12 and Statement of Disinterestedness for Employment of Professional Person Under F.R.B.P. 2014, at ¶ 3.

16.     The following provisions in the Qui Tam Action Retainer are relevant to the Trustee's motion for ancillary relief:

Section 2. **Attorney's Responsibilities**

\*\*\*

CLIENT understands that ATTORNEY cannot predict with certainty the likely outcome of this matter nor guarantee its ultimate success or the amount of Client's possible recovery. Client acknowledges that in agreeing to the terms of the Agreement CLIENT is not relying on any such predictions or guarantees, whether express or implied.

**6.1. Contingency Percentage in Whistleblower Claims**

(a) If the United States or any state or local government intervenes with respect to any Claim, as described in Section 5 above (an "Intervened Claim"), ATTORNEY shall receive a contingent fee equal to forty per-cent (40%) of the amount of any and all proceeds

obtained by CLIENT as the relator's share with respect to any intervened Claim (the "Relator's Share").

(b) If neither the United States nor any state or local government chooses to intervene with respect to any Claim (a "Declined Claim"), and if ATTORNEY and CLIENT have agreed to continue to litigate the Declined Claim, as provided in Section 5 above, ATTORNEY shall receive a contingent fee equal to fifty percent (50%) of the amount of any and all proceeds obtained by CLIENT as the Relator's Share with respect to any Declined Claim.

(c) If there is a mix of Intervened Claims and Declined Clams, the contingency on any successful Intervened Claims will forty per-cent (40%) and the contingency fee on any successful Declined Claims will be fifty percent (50%), as provided in sub-sections (a) and (b) above.

## 6.2. Calculation of Contingency Percentage

ATTORNEY's contingent fee shall be computed on the gross recovery of the Relator's Share.

## 6.3. Statutory Fees

CLIENT agrees that in addition to the ATTORNEY's contingent fee described in Section 6.1 ATTORNEY shall receive any statutory attorney's fees that may be awarded against or agreed to by DEFENDANT(S) pursuant to any litigation arising from the Claims.

## 6.5. Adjustment of Contingent Fee in the Case of Gross Unfairness

In the event the outcome of this case is such that the determination of ATTORNEY's fee in the manner described in this Section would render a literal interpretation of the Agreement unreasonable or grossly unfair and unjust to CLIENT, ATTORNEY, at ATTORNEY's discretion, will make adjustments in the Agreement to make it fair and equitable to both parties.

## 7.1 Expenses

ATTORNEY will advance all costs and expenses of litigation, including court costs, expenses of investigation, expenses of examinations and experts and costs of obtaining and presenting evidence, as provided in the New York Lawyer's Rules of Professional Conduct Rule 1.8(e). CLIENT will be given a contemporaneous accounting of the litigation costs and expenses and shall authorize any individual expenditure greater than $500.00. Reimbursement of costs and expenses shall be solely from the CLIENT's portion of the Relator's Share, if any, and/or settlement or court awarded costs, if any, as provided in Section 6 above and, therefore, CLIENT shall not be responsible to pay ATTORNEY out of CLIENT's own funds for any litigation costs or expenses incurred by ATTORNEY.

## 7.2. Deposit of Recoveries to Escrow Account

Any costs or expenses that are awarded to CLIENT in the litigation shall be deposited to

5

the Escrow Account and applied first to reimburse ATTORNEY for costs and expenses of investigation and litigation advanced by ATTORNEY and not reimbursed by CLIENT, and the remainder, if any, shall be paid to CLIENT. Any sums other than costs and expenses that are recovered on behalf of CLIENT shall be deposited to the Escrow Account to be applied in the following order: (i) payment of fees and costs owed to third parties, if any; (ii) payment of unpaid attorney's fees and costs and expenses advanced by ATTORNEY but not yet reimbursed; and (iii) payment of CLIENT's share.

### 8.1. Costs Awarded by the Court or Agreed to by the Parties

CLIENT hereby assigns to ATTORNEY all right, title, and interest in any costs and expenses awarded to CLIENT by the court or agreed to by ATTORNEY and any DEFENDANT pursuant to any litigation arising from the Claims to the extent necessary to reimburse ATTORNEY for amounts advanced in the course of the representation and not already reimbursed by CLIENT.

### 8.2. Fees Awarded by Court or Agreed to by the Parties

CLIENT hereby assigns to ATTORNEY all right, title, and interest in any statutory fees awarded to CLIENT by the court or agreed to by ATTORNEY and any DEFENDANT pursuant to any litigation arising from the Claims.

### 8.3. Execution of Assignment Documents

CLIENT agrees to execute any necessary documents evidencing the assignment to ATTORNEY of statutory fees and costs which may be awarded or agreed to, as provided in this Agreement.

### Section 9. Limitation on Waiver of Attorney's Fees

CLIENT shall not waive, settle, or otherwise compromise CLIENT's right to the award or agreement of statutory attorney's fees or costs or expenses without receiving ATTORNEY's prior written approval.

### Co-relators' Agreement as to Sharing Any Recovery

Thus, absent any unforeseen circumstances or directions from them to the contrary, if at the end of this matter there is a recovery to be distributed, McInnis Law will separately transmit one-half of the net recovery (after attorney fees and costs have been deducted) to each Donald Johnson and Haedeuk Yae.

17.    Notwithstanding relators' counsel right to 50% of the relators' share in this case,

see 6.1(b) to the Qui Tam Action Retainer, relators' counsel unilaterally and voluntarily agreed to

reduce their contingency to 33 1/3% under the permissive authority of section 6.5.

6

18.     Notwithstanding relators' counsel right to be reimbursed for advanced expenses and costs before calculating relators' net proceeds from the settlement of this action, see 7.1 and 8.1 to the Qui Tam Action Retainer and the Co-relators' Agreement as to Sharing Any Recovery, relators' counsel similarly unilaterally and voluntarily agreed to pay the relators' shares to the co-relators without reducing that amount by counsel's unreimbursed expenses and costs. As a result, relators' counsel agreed to recover their statutory expenses and costs from the attorneys' statutory fees and not from the relators' award from the government, as was provided in the retainer.

19.     Relators' co-counsel agreed among themselves to allocate any contingency fee as follows: McInnis Law - 65%; Cohen Seglias Pallas Greenhall & Furman, PC. - 20% and Kleiman Rajaram - 15%.

20.     Relators' co-counsel further agreed among themselves to allocate any statutory fees earned pursuant to the False Claims Act, 31 U.S.C. § 3730(d)(2) on a pro rata basis.

21.     McInnis Law agreed to advance all litigation expenses and costs in exchange for a right to be reimbursed for them pursuant to the False Claims Act, 31 U.S.C. § 3730(d)(2).

22.     Accordingly, as shown below, McInnis Law will receive $306,954 in fees and $65,262.93 in expenses and costs if the Proposed Settlement Agreement is approved by the Bankruptcy Court and then the United States District Court:

a.     Under the terms of the Proposed Settlement Agreement, McInnis Law will receive $30,875 as its contingency fee. This is calculated by multiplying the settlement amount ($500,000) by the relators' share percentage (28.5%) and then multiplying this by relators' counsel's revised voluntarily-reduced contingency percentage (33 1/3%) and then multiplying this by the firm's contingency percentage (65%).

7

b.  Under the terms of the Proposed Settlement Agreement, McInnis Law will receive $276,079 as its statutory fee. This is calculated by reducing the fees, expenses and costs amount ($490,000) by the expenses and costs that were incurred solely by McInnis Law ($65,262.93 as of March 27, 2026) and then multiplying this by the firm's contingency percentage (65%).

c.  Under the terms of the Proposed Settlement Agreement, McInnis Law will receive $65,262.93 for expenses and costs incurred as of March 27, 2026. Such expenses increase monthly by $107.79 due to database service charges required to maintain the evidence in the Qui Tam Action in an "inactive" status until the matter is resolved.

### The Qui Tam Action's History

23.  Donald Johnson first contacted me in February 2019 with allegations that his former employer, defendant Chromologic, LLC, was submitting false grant applications and research to various government agencies participating in the SBA's Small Business Innovation Research ("SBIR") program, in violation of the False Claims Act.

24.  Thereafter, I formed a co-counsel agreement with Thomas J. Fallati, Esq. of Tabner, Ryan & Keniry, LLP (Albany, NY) to investigate Mr. Johnson's allegations and if warranted file a False Claims Act complaint against Chromologic and its owner defendant Naresh Menon.

25.  Mr. Fallati and I spent considerable time over the next 10 months investigating and evaluating Mr. Johnson's allegations and his supporting evidence. After which, with the assistance of Kleiman Rajaram acting as traditional local counsel, we filed a False Claims Act qui tam complaint under seal in the United States District Court for the Central District of California on January 6, 2020. *United States of America ex rel Donald Johnson v. Chromologic LLC and Naresh Menon*, cv20-00130-DSF-SSx.

26.     Thereafter, we assisted the government in investigating Mr. Johnson's allegations, which included submitting voluminous documentary evidence and analyses and participating in two relator interviews with government representatives and Mr. Johnson.

27.     Ultimately, the U.S. Attorney's Office for the Central District of California declined to intervene in the action and we voluntarily dismissed it without prejudice.

28.     Following the dismissal, numerous Chromologic employees, including debtor Haedeuk Yae (who is known as Robert Yae), contacted and/or spoke with us about Mr. Johnson's allegations. They uniformly alleged that Chromologic was committing SBIR related fraud and backed Mr. Johnson without reservation. Mr. Yae also provided us with information about Chromologic's false time reporting on SBIR projects and indicated he wanted to join Mr. Johnson if the case were to be reinstated.

29.     As a result of these communications and further investigation, with the assistance of Cohen Seglias Pallas Greenhall & Furman, PC. (Washington, D.C.) we filed a new False Claims Act complaint under seal in the United States District Court for the District of Columbia on August 5, 2021. *United States of America ex rel. Donald Johnson and Haedeuk Yae v. Chromologic LLC and Naresh Menon*, Civil Action 21-2184 (RJL) (D.D.C).

30.     Not only did we add Mr. Yae as a co-relator, but we also added time fraud allegations to Mr. Johnson's research fraud allegations. Co-counsel Cohen Seglias Pallas Greenhall & Furman, PC. had primary responsibility for working with Mr. Yae and developing his time fraud allegations.

31.     Similar to the first filing, as relators' counsel we assisted the government with its investigation –which was limited to our time fraud allegations. That included revamping our analyses and legal research and updating our disclosure materials and evidence to the

9

government. Notwithstanding our considerable efforts, the government again declined to intervene in the action.

32. Similar to the first time around, after the government's second declination decision we interviewed Chromologic employees and learned that many of our key witnesses had never been contacted by government representatives. Since they had important testimony about time fraud and expressed a willingness to cooperate with us, we decided to go forward without the government, as is permitted under the False Claims Act, 31 U.S.C. § 3730(c)(3).

33. Thereafter, the case was unsealed and we served the complaint on Chromologic and Mr. Menon.

34. Chromologic and Mr. Menon retained a large, national law firm to defend our suit and defense counsel moved to dismiss under Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6) on July 15, 2024.

35. This motion practice ultimately led to the parties agreeing in July 2024 to the voluntary transfer of the action to the United States District Court for the Central District of California and the Qui Tam Action commenced there on or about August 14, 2024.

36. Once in California we re-retained Kleiman Rajaram as co-counsel, not only for local counsel purposes but also to assist in litigating Mr. Johnson's research fraud allegations, given the firm's expertise in this area.

37. Defendants Chromologic and Menon retained another national law firm to replace counsel from the D.C. litigation and new counsel renewed a motion to dismiss.

38. This led to relators preparing and filing a first amended complaint ("FAC") on September 18, 2024, which became and is the operative pleading. See Ex. 3 to the Leslie Decl.

39. Of tremendous significance for present purposes, the FAC did not include a "fraud in the inducement" theory of liability, the significance of which is discussed more fully below under the heading Fraud in the Inducement.

40. The reason the fraud in the inducement theory was not included in the FAC is that neither co-relator nor any friendly witness had provided counsel with any testimony or documents that even remotely hinted at its viability. Nor could they because that evidence rested with Defendants' most trusted witness, namely, Theresa Nguyen, and the fraud in the inducement theory would not be revealed as a possibility until after Defendants produced documents and emails relating to the FAC's time fraud allegations.

41. Moreover, the fraud in the inducement theory had to be further corroborated by government employees who relied on Defendants' fraudulent representations. And these persons were non-party witnesses who could only be interviewed if the affected agency agreed to allow it following receipt of a Rule 45 third party subpoena and so-called "Touhy," submission, which permitted the agency to deny such a request if it determined that allowing government employee interviews would interfere with the agency's business and mission.

42. Upon information and belief, based on the strength of the FAC, Defendants chose to not renew a motion to dismiss and litigation shifted to the discovery phase .

43. Early on, the parties perceived that the court-ordered discovery schedule was too brief to permit needed discovery and jointly moved to extend the pre-trial schedule by 90 days. The court summarily denied that request on April 24, 2025.

44. The court had also cautioned the parties when issuing its scheduling orders that the court would not permit the parties the amount of time they requested for trial, namely, three weeks.

11

45.     Under the court's pre-trial orders, any application to amend the FAC had to be heard by February 17, 2025. This meant that motion papers requesting such relief had to be filed and served no later than January 21, 2025, which was only about five weeks after the parties were permitted to serve document demands and 9 days before Defendants served their first document demand response and produced their first wave of documents on January 30, 2025. In other words, Relators did not even receive Defendants' documents suggesting a possible fraud in the inducement theory until more than a week after the court's cutoff date for filing a motion to amend the FAC. And of course one needed to wade through thousands of pages of documents and emails to find such evidence.

46.     As part of discovery, the parties exchanged many thousands of pages of documents, took approximately 20 depositions, obtained declarations from about one-half dozen witnesses, and propounded and answered numerous interrogatories.

47.     Upon information and belief, based on the competent evidence adduced during discovery Defendants elected to not seek to dismiss the Qui Tam Action on summary judgment under Fed. R. Civ. P. 56.

48.     Following the close of discovery September 8, 2025, the parties engaged in court-ordered mediation on September 19th and 23rd. When that failed after two, lengthy and in-depth mediation sessions, both sides prepared in earnest for trial, which was set for November 18, 2025.

49.     That included preparing all pre-trial materials such as witness and exhibit lists, jury charges and verdict sheets, and motions in limine. All of which were extensive and hotly contested by the parties.

Among the motions in limine was Relator's request to amend the FAC to conform to the evidence adduced during discovery to include fraud in the inducement as an alternative theory of liability and means to prove damages. Relators argued there were three separate grounds supporting this request, namely, the FAC sufficiently alluded to the necessary facts, Defendants had litigated as though they knew they faced liability under this theory, and, under Fed. R. Civ. P. 15(a) and (b) plaintiffs are freely permitted to amend their complaints to conform to the evidence — even as late as the close of one's case at trial.

50.     Ruling from the bench following oral argument at the final pre-trial conference on November 10, 2025, the court denied Relator's motion to include the fraud in the inducement theory. See Ex. 5 to the Leslie Decl.

51.     At the final pre-trial conference, the court made it clear that parties should actively engage in settlement discussions; it therefore ordered the parties to attend a second mediation session. *Id.*

52.     The second mediation session occurred beginning on December 3, 2025. It resulted in an agreement in principle that was later finalized as the Settlement Agreement. Those terms ($500,000 for the qui tam claims and $490,000 for attorneys' fees and litigation expenses and costs) reflected, among other things, Defendants' ability and willingness to pay, Relators' challenges in getting erstwhile friendly witnesses, including key ones who had moved out of the district, to appear for trial and to give complete testimony, and in limine rulings by the court on many issues affecting the ability to prove liability and calculate damages.

53.     The amount of statutory attorneys' fees co-relators' counsel agreed to accept was at least one-third, if not less, than what had been incurred as of the mediation conference.

## The Bankruptcy Proceeding's History

54.    Former co-relator Yae filed a Chapter 7 bankruptcy petition on November 18, 2024 (the "Petition"). See Petition, ECF 1.

55.    The Petition was filed approximately 3 years and 9 months after Yae executed the Qui Tam Action Retainer, in which, among other things, he unconditionally assigned at that time any and all interest in his half of the statutory fees, expenses and costs recovered under 31 U.S.C. § 3730(d)(2) of the False Claims Act to McInnis Law.

56.    The Petition was filed approximately 3 years and 3 months after the co-relators commenced the Qui Tam Action in the United States District Court for the District of D.C.

57.    The Petition lists primarily consumer debt in the amount of $135,470.00 that is owed to between 1-49 creditors, mainly credit card companies.

58.    The Petition lists no significant assets other than a guestimate of Yae's possible recovery in the Qui Tam Action, which he values at $20 million in total and his share at $10 million -- even though the "value [is] not known." See lines 27, 33 and 36.

59.    In describing the Qui Tam Action, the Petition characterizes it as follows:

> Debtor is a Co-relator in Lawsuit in DC district along with Donald
> Johnson and has an agreement of 50% to any recovery from the claim .
> See claim below listed against Chromologic LLC *value not known* could
> be in the Millions, Any settlement is Dependent on US Gov Approval,
> claiming all available exemption see below.

Petition at Line 27 (emphasis added).

> Lawsuit in DC district as a relator on behalf of United States
> against Chromologic LLC *value not known* could be in the
> Millions, Any settlement is Dependent on US Gov Approval,
> claiming all available exemption of $23,050.

Petition at Line 33 (emphasis added).

14

60.  Relators' counsel in the Qui Tam Action had no role whatsoever in Yae's decision to file the Petition or Yae's valuation of his possible recovery from it. Indeed, I cautioned both Yae and his bankruptcy counsel against filing the Petition because it would complicate the Qui Tam Action since Yae would no longer be a party to it and his status would become that of a third party witness. And I cautioned bankruptcy counsel against assigning any value to the Qui Tam Action in the Petition since it was too speculative to do so.

61.  The Trustee made his decisions with respect to including and valuing the Qui Tam Action in the bankruptcy proceedings, as well as continuing McInnis Law as counsel under the terms of the Qui Tam Action Retainer, independently of any representations, predictions or guarantees by Relators' counsel as to the outcome of the action. The Qui Tam Action Retainer also expressly precludes the Trustee from claiming such reliance. See Section 2.

62.  While I did have conversations and email exchanges with the Trustee and his general counsel about the Qui Tam Action, they were largely explanatory in nature (since False Claims Act litigation is unique and not widely understood). I never made any specific predictions, promises or guarantees as to outcome. And I unvaryingly stressed it could be a small to no recovery case or it could be a large recovery case.

63.  The email from me that the Trustee includes in his motion papers shows a balanced forecast of the possible outcome: See Ex. 5 to the Leslie Decl. There, I point out that even after the court's pretrial conference rulings "we still don't know if it's a six-figure or seven-figure case." As it turns out, it will be the former, assuming the Settlement Agreement is approved by the Bankruptcy Court and District Court.

64.  Notably, at no time did I ever mention anything about a potential fraud in the inducement theory of liability while the Trustee was assessing and valuing the Qui Tam Action as

15

a possible asset of the debtor's estate or the Trustee's retention of me as special litigation counsel.

### Fraud in the Inducement Theory of Liability

65.    The Trustee opines that Relators' attorneys committed malpractice by not including a fraud in the inducement theory of liability in the FAC and this was manifested when the judge denied our motion to amend the FAC after the conclusion of discovery.

66.    Fraud in the inducement in this context is merely an alternative means of proving False Claims Act liability. Here, that meant proving Defendants lured the government agencies in to allowing Chromologic to participate in the SBIR program by falsely describing its time recording system, policies and practices. And then using proof of such fraudulent inducement to establish that all subsequent government SBIR awards were tainted for determining liability and calculating damages. This theory would be in addition to the more traditional means of establishing liability. In other words, taking each SBIR contract and showing that employees billed excessive time to it and then calculating the amount the government paid for this excessive billing.

67.    By disallowing our use of the fraud in the inducement theory, the District Court made our job at trial more difficult, but it did not, in and of itself, reduce the number of SBIR contracts at issue or the amount of damages. Nor did the court's ruling have any impact on the research fraud allegations.

68.    In the end, the inability to rely on fraud in the inducement did not affect the outcome of the mediated settlement, in my judgment. In the second mediation session, we elected not to press on the research fraud allegations and the parties jointly were able to agree on six SBIR contracts where Defendants had financial exposure at trial for time fraud. The

aggregate amount of potential single damages was roughly $12.6 million. Trebled, as required by the False Claims Act, 31 U.S.C. § 3729, the exposure was approximately $37.9 million. This was a figure well above what the Defendants could or would pay to resolve the case. But it was well within the realm of theoretical possibility even after the court's ruling on fraud in the inducement.

69.    Also, as stated above, neither the co-relators nor our other witnesses knew about the Defendants' fraud in the inducement misconduct. We only learned of this when we received and analyzed Defendants' records, which showed the transmission of what we believed were blatantly false time recording policies, procedures and practices to representatives from the Department of Defense. This information did not even surface until after the court's cut-off date for amending the FAC without leave of the court.

### Reasonableness of Fees, Expenses and Costs

70.    The Trustee does not argue that Relators' attorneys' fees are unreasonable under the so-called "lode star" test. Nor could he. At the time he retained McInnis Law in May 2025, the Trustee knew the firm's hourly rate would be $950. Further, at that time, the Trustee also knew substantial hours had already been expended in getting the matter to that point in the litigation. In fact, at the time of McInnis Law's appointment the parties were nearly half-way through the discovery phase. Nowhere does the Trustee contend that the co-relators' attorneys' efforts were unnecessary, duplicative, inflated or unreasonable given the nature and complexity of the Qui Tam Action and its long and tortuous path.

71.    Among other litigation expenses and costs, there were numerous depositions, substantial travel expenses, a considerable monthly charge to maintain Relators' documentary evidence database, and mediation fees (which alone were approximately $22,000). The Trustee

17

does not even contend that the claimed amount (that is, $65,262.93 as of March 27, 2026) is excessive, unreasonable or unjustified.

72.     The Trustee merely argues that the combination of the attorneys' fees and litigation expenses and costs are "disproportionate" to the relator's share being allocated to the bankruptcy proceeding (that is, $47,500).

## CONCLUSION

73.     For the reasons set forth in Part I, above, the Court should approve the Settlement Agreement and permit the Qui Tam Action to be resolved and dismissed.

74.     For the reasons set forth in Part II, above, the Court should deny the Trustee's request for ancillary relief and rule without a hearing that Relators' counsel are entitled to the contingency fee, statutory fee, and reimbursement for expenses and costs, expressly provided for in the Settlement Agreement and the Qui Tam Action Retainer (as voluntarily amended in the co-relators' favor by Relators' counsel).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 28, 2026, New York, New York.

Timothy J. McInnis

18

11657248.1 57127-0001

# DECLARATION OF POOJA RAJARAM

**DECLARATION OF POOJA RAJARAM IN PARTIAL SUPPORT OF, AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

## DECLARATION OF POOJA RAJARAM

I, Pooja Rajaram hereby declare as follows:

1.      I am an attorney in the law firm of Kleiman Rajaram, 12121 Wilshire Blvd., Ste. 810, Los Angeles, CA 90025. and co-counsel for plaintiff-relator Donald Johnson, who has since been substituted by Noelle Johnson, Successor to the Estate of Donald Johnson (deceased), and was co-counsel for plaintiff-relator Haedeuk Yae, who has since been substituted by Sam S. Leslie, Chapter 7 Trustee of the Bankruptcy Estate of Haedeuk Yae ("Trustee"), in a False Claims Act action commenced under its qui tam provisions, 31 U.S.C. § 3730(b) that is pending in the United States District Court for the Central District of California and captioned *United States of America ex rel. Donald Johnson and Haedeuk Yae v. Chromologic LLC And Naresh Menon*, Case No. 2:24-cv-06749-PA-DMKx (C.D. Cal.), (the "Qui Tam Action"). By U.S. District Court order dated April 3, 2026, I withdrew and was substituted as counsel for the Trustee in the Qui Tam Action by Eric P. Israel, Esq. of Levene, Neale, Bender, Yoo & Golubchik L.L.P.

2.      I submit this declaration in support of the Trustee's motion to approve a compromise with defendants Chromologic, LLC and Naresh Menon in the Qui Tam Action (the "Proposed Settlement Agreement"), and in opposition to the Trustee's motion for ancillary relief, namely, a hearing to determine whether any of the relators' attorneys' fees earned by my firm, and current co-counsel McInnis Law and former co-counsel Cohen Seglias Pallas Greenhall & Furman, PC., and any of the reimbursed costs and expenses incurred by relators' counsel in the

Qui Tam Action, should be allocated to the Trustee, his counsel and accountant, the debtor and the creditors in this bankruptcy proceeding.

3. Except where otherwise indicated, I have personal knowledge of the facts contained in this declaration except for those matters that are based upon information and belief, and as to such matters, I believe such matters to be true. If called upon to do so, I could and would testify competently to the matters set forth herein.

4. Neither I nor my law firm was ever appointed counsel or special litigation counsel to, or retained by, the Trustee for any legal matter, including the Qui Tam Action. See Ex. 4 to the Declaration of Sam S. Leslie, dated March 27, 2026, in this proceeding, ECF 35 ("Leslie Decl.").

5. Under the terms of the governing retention agreement in the Qui Tam Action, see Ex. 2 to the Leslie Decl. and the agreement of relators' co-counsel that was disclosed to the Trustee at the time he applied to retain McInnis Law as special litigation counsel, see Application to Employ Mcinnis Law as Special Litigation Counsel, dated March 11, 2025, ECF 28 at ¶ 13, my firm is entitled to 15% of any proceeds awarded to the co-relators by the government plus a pro rata share of statutory attorneys' fees, expenses and costs paid by Defendants to co-relators' counsel pursuant to the False Claims Act, 31 U.S.C. § 3730(d)(2).

6. As shown below, my firm will receive $70,836 if the Proposed Settlement Agreement is approved by the Bankruptcy Court and then the United States District Court:

a. Under the terms of the Proposed Settlement Agreement, my firm will receive $7,125 as its contingency fee. This is calculated by multiplying the settlement amount ($500,000) by the relators' share percentage (28.5%) and then multiplying this by relators' counsel's revised voluntarily-reduced contingency percentage (33 1/3%) and then multiplying this by my firm's contingency percentage (15%).

2

b.      Under the terms of the Proposed Settlement Agreement, my firm will receive

$63,711 as its statutory fee. This is calculated by reducing the fees, expenses and costs amount

($490,000) by the expenses and costs, which were incurred solely by co-relators' counsel

McInnis Law ($65,262.93 as of March 27, 2026), and then multiplying this by my firm's

contingency percentage (15%).

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on April 28, 2026, Los Angeles, California.


_____
Pooja Rajaram

3

# DECLARATION OF
# JULIE A. GROHOVSKY

**DECLARATION OF JULIE A. GROHOVSKY IN PARTIAL SUPPORT OF, AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

## <u>DECLARATION OF JULIE A. GROHOVSKY</u>

I, Julie A. Grohovsky, Esq., hereby declare as follows:

1.      I am an attorney in the law firm of Cohen Seglias Pallas Greenhall & Furman, PC., 900 7th St NW, Washington, DC 20001, and was formerly co-counsel for plaintiff-relator Donald Johnson, who has since been substituted by Noelle Johnson, Successor to the Estate of Donald Johnson (deceased), and was formerly co-counsel for plaintiff-relator Haedeuk Yae, who has since been substituted by Sam S. Leslie, Chapter 7 Trustee of the Bankruptcy Estate of Haedeuk Yae ("Trustee"), in a False Claims Act action commenced under its qui tam provisions, 31 U.S.C. § 3730(b), that is pending in the United States District Court for the Central District of California and captioned *United States of America ex rel. Donald Johnson and Haedeuk Yae v. Chromologic LLC And Naresh Menon*, Case No. 2:24-cv-06749-PA-DMKx (C.D. Cal.), (the "Qui Tam Action"). By U.S. District Court order dated November 14, 2025, I was permitted to withdraw as counsel for plaintiff-relators in the Qui Tam Action.

2.      I submit this declaration in support of the Trustee's motion to approve a compromise with defendants Chromologic, LLC and Naresh Menon (jointly, "Defendants") in the Qui Tam Action (the "Proposed Settlement Agreement"), and in opposition to the Trustee's motion for ancillary relief, namely, a hearing to determine whether any of the relators' attorneys' fees earned by my firm, and former co-counsel McInnis Law and former co-counsel Kleiman Rajaram, and any of the reimbursed costs and expenses incurred by relators' counsel in the Qui Tam Action, should be allocated to the Trustee, his counsel and accountant, the debtor and the creditors in this bankruptcy proceeding.

3.      Except where otherwise indicated, I have personal knowledge of the facts contained in this declaration except for those matters that are based upon information and belief, and as to such matters, I believe such matters to be true. If called upon to do so, I could and would testify competently to the matters set forth herein.

4.      Neither I nor my law firm was ever appointed counsel or special litigation counsel to, or retained by, the Trustee for any legal matter, including the Qui Tam Action. See Ex. 4 to the Declaration of Sam S. Leslie, dated March 27, 2026, in this proceeding, ECF 35 ("Leslie Decl.").

5.      Under the terms of the governing retention agreement in the Qui Tam Action, see Ex. 2 to the Leslie Decl. and the agreement of relators' co-counsel that was disclosed to the Trustee at the time he applied to retain McInnis Law as special litigation counsel, see Application to Employ Mcinnis Law as Special Litigation Counsel, dated March 11, 2025, ECF 28 at ¶ 13, my firm is entitled to 20% of any proceeds awarded to the co-relators by the government plus a pro rata share of statutory attorneys' fees, expenses and costs paid by Defendants to co-relators' counsel pursuant to the False Claims Act, 31 U.S.C. § 3730(d)(2).

6.      As shown below, my firm will receive $94,447 if the Proposed Settlement Agreement is approved by the Bankruptcy Court and then the United States District Court:

a.      Under the terms of the Proposed Settlement Agreement, my firm will receive $9,500 as its contingency fee. This is calculated by multiplying the settlement amount ($500,000) by the relators' share percentage (28.5%) and then multiplying this by relators' counsel's revised voluntarily-reduced contingency percentage (33 1/3%) and then multiplying this by my firm's contingency percentage (20%).

b.      Under the terms of the Proposed Settlement Agreement, my firm will receive $84,947 as its statutory fee. This is calculated by reducing the fees, expenses and costs amount

2

($490,000) by the expenses and costs, which were incurred solely by co-relators' counsel

McInnis Law ($65,262.93 as of March 27, 2026), and then multiplying this by my firm's

contingency percentage (20%).

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on April 28, 2026, in Washington, D.C.

*/s/ Julie A. Grohovsky*

Julie A. Grohovsky

3

# DECLARATION OF
# NOELLE JOHNSON

**DECLARATION OF NOELLE JOHNSON IN PARTIAL SUPPORT OF, AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF**

<u>**DECLARATION OF NOELLE JOHNSON**</u>

I, Noelle Johnson hereby declare as follows:

1.      I am the widow of Donald Johnson and Successor to the Estate of Donald Johnson (deceased) that was substituted, by court order dated, February 2, 2026, as a co-plaintiff relator in a False Claims Act action commenced under its qui tam provisions, 31 U.S.C. § 3730(b) that is pending in the United States District Court for the Central District of California and captioned *United States of America ex rel. Donald Johnson and Haedeuk Yae v. Chromologic LLC And Naresh Menon*, Case No. 2:24-cv-06749-PA-DMKx (C.D. Cal.), (the "Qui Tam Action").

2.      I submit this declaration in support of the Trustee's motion to approve a compromise with defendants Chromologic, LLC and Naresh Menon in the Qui Tam Action (the "Proposed Settlement Agreement"), and in opposition to the Trustees motion for ancillary relief, namely, a hearing to determine whether any of the relators' attorneys' fees and reimbursed costs and expenses incurred by relators' counsel in the Qui Tam Action, should be allocated to the Trustee, his counsel and accountant, the debtor and the creditors in this bankruptcy proceeding.

3.      Except where otherwise indicated, I have personal knowledge of the facts contained in this declaration except for those matters that are based upon information and belief, and as to such matters, I believe such matters to be true. If called upon to do so, I could and would testify competently to the matters set forth herein.

4.      Under the terms of the governing retention agreement in the Qui Tam Action, see Ex. 2 to the Leslie Decl. and the annexed co-relators' addendum, the Estate of Donald Johnson is entitled to one-half of the proceeds from the Qui Tam Action, and is responsible for one-half of

the costs. Co-relator Haedeuk Yae is similarly entitled to one half of the proceeds and responsible for one-half of the costs.

5. In seeking to retain McInnis Law as Special Litigation Counsel, the Trustee represented that it granting his request was "without any effect on the co-plaintiffs rights and obligations under the terms of the retention agreement and coplaintiffs' addendum thereto." Application to Employ Mcinnis Law as Special Litigation Counsel, dated March 11, 2025, ECF 28 at pp. 6-7.

6. Under the terms of the Proposed Settlement Agreement the Estate of Donald Johnson is to receive a relator's share award of $47,500 from the government. This is calculated by multiplying the settlement amount ($500,000) by the relators' share percentage (28.5%) and then dividing this equally with the co-relator.

7. Under the terms of the Proposed Settlement Agreement, the Estate of Donald Johnson will receive $245,000 in statutory fees, expenses and costs from the Defendants. This is calculated by equally dividing the agreed upon fees and costs amount in the settlement ($490,000) with the co-relator.

8. The retention agreement with McInnis Law provides that all of the Estate of Donald Johnson's statutory fees, expenses and costs were assigned to McInnis Law upon its execution.

9. On behalf of the Estate of Donald Johnson, I support the Trustee's motion to approve the Settlement Agreement but object to the Trustee's request for a hearing on approval of attorneys' fees, expenses and costs.

2

10.    I further object to this Court taking any action that would negatively impact the rights of the Estate of Donald Johnson, including, escrowing any funds due to it and delaying the distribution of its relator's share award from the government.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 27, 2026, Glendora, California.


Noelle Johnson (Apr 27, 2026 14:20:47 PDT)

Noelle Johnson

# NJ Decl

Final Audit Report                                                                2026-04-27

| | |
|---|---|
| Created: | 2026-04-27 |
| By: | Jennifer Siemsen (jsiemsen@nmslaw.net) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA9byV0gMhw0g3pHgNvQvDBOWjB3iiU_Ci |

## "NJ Decl" History

Document created by Jennifer Siemsen (jsiemsen@nmslaw.net)
2026-04-27 - 8:10:26 PM GMT

Document emailed to Noelle Johnson (noelle.johnson85@gmail.com) for signature
2026-04-27 - 8:10:31 PM GMT

Email viewed by Noelle Johnson (noelle.johnson85@gmail.com)
2026-04-27 - 9:10:19 PM GMT

Document e-signed by Noelle Johnson (noelle.johnson85@gmail.com)
Signature Date: 2026-04-27 - 9:20:47 PM GMT - Time Source: server

Agreement completed.
2026-04-27 - 9:20:47 PM GMT

**Adobe Acrobat Sign**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

12121 Wilshire Blvd., Ste., 810, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): RELATORS' COUNSEL'S MEMORANDUM IN PARTIAL SUPPORT OF, AND IN PARTIAL OPPOSITION TO, TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH CHROMOLOGIC, LLC AND NARESH MENON AND FOR ANCILLARY RELIEF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 28, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Eric P Israel    epi@lnbyg.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com

Roland H Kedikian    roland@kedikianlaw.com, g2547@notify.cincompass.com; kedikian.rolandb126341@notify.bestcase.com

Sam S Leslie (TR)    sleslie@trusteeleslie.com, trustee@trusteeleslie.com;C195@ecfcbis.com

United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) **April 28, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Honorable Barry Russell**
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 28, 2026,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

VIA EMAIL TO:

| | |
|---|---|
| Kelly Morrison - Kelly.L.Morrison@usdoj.gov; | Michael Jones - Michael.Jones4@usdoj.gov; |
| Hunter Thomson - hunter.thomson@usdoj.gov; | Daniel Kastner - daniel.w.kastner@usdoj.gov; |
| Charles Sims csims@ohaganmeyer.com; | Enita Chopra EChopra@ohaganmeyer.com; |
| Timothy McInnis tmcinnis@mcinnis-law.com; | Eric P. Israel, EPI@LNBYG.COM |
| Julie Grohovsky jgrohovsky@cohenseglias.com; | Nadine Sayegh nsayegh@nmslaw.net |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/28/26 | Pamela R. Savoie | *Pamela R Savoie* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**