FILED
JUL 13 2026
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

CRYSTAL GLENDA ROSENLUND
1916 Rockefeller Lane, Unit 7
Redondo Beach, CA 90278
(310)697-9722
crystalrosenlund@icloud.com
In Pro Per

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CRYSTAL GLENDA ROSENLUND,<br><br>Debtor. | Case No.: 2:26-bk-11423-BR<br><br>CHAPTER 7<br><br>**DEBTOR'S REPLY TO CREDITOR BRIAN ROSENLUND'S OPPOSITION TO DEBTOR'S MOTIONS TO AVOID JUDICIAL LIENS (Dkt. Nos. 20, 21, 22, and 23)PURSUANT TO 11 U.S.C. § 522(f)**<br><br>Date: JULY 28, 2026<br>Time: 10:00 A.M.<br>Courtroom: 1668 (in person hearing)<br>EDWARD ROYBAL BUILDING –<br>255 E. TEMPLE STREET<br>LOS ANGELES, CA 90012<br>Judge: HONORABLE BARRY RUSSELL |

# I. INTRODUCTION

Debtor Crystal Glenda Rosenlund ("Debtor") respectfully submits this consolidated Reply to the Opposition (Dkt. No. 35) filed by Creditor Brian Rosenlund ("Creditor") in response to Debtor's Motions to Avoid Judicial Liens filed at Docket Nos. 20, 21, 22, and 23 pursuant to 11 U.S.C. § 522(f). Because Creditor filed a single Opposition addressing all four motions, and because the legal and factual issues presented are substantially identical, this consolidated Reply applies equally to each motion unless otherwise indicated.

Rather than applying the statutory impairment formula prescribed by Congress, Creditor attempts to transform these straightforward lien-avoidance motions into collateral disputes concerning family-law arrears, bankruptcy schedules, electronic payment applications, and speculative assertions regarding the condition of the Property.

The Bankruptcy Code requires the Court to determine whether the judicial liens impair Debtor's homestead exemption. Congress prescribed the formula: the judicial lien, all other liens, and the exemption are compared against the value of Debtor's interest in the Property. The Bankruptcy Code

further defines "value," for purposes of § 522, as fair market value as of the petition date. Debtor filed this Chapter 7 case on February 17, 2026, and that is the relevant valuation date.

Debtor claimed a homestead exemption of $900,000.00 on Schedule C. No general objection to that exemption was filed within the period prescribed by Federal Rule of Bankruptcy Procedure 4003(b)(1). Rule 4003(d)(2), however, permits a lien creditor opposing relief under 11 U.S.C. § 522(f) to challenge, for purposes of the lien-avoidance proceeding, the validity of the exemption asserted to be impaired. Accordingly, although Rule 4003(d)(2) permits Creditor to challenge the exemption in this contested matter, Creditor bears the burden of proving that the exemption was not properly claimed.

Debtor also received her Chapter 7 discharge on June 1, 2026. On June 9, 2026, the Chapter 7 Trustee filed a Report of No Distribution, certifying that he made a diligent inquiry into Debtor's financial affairs and the location of property belonging to the estate; that he neither received nor paid money on account of the estate; that there was no property available for distribution over and above exempt property; and that the estate had been fully administered. The Trustee's Report further identified "Assets Abandoned" as $217.08, "Assets Exempt" as $900,000.00, "Claims Scheduled" as $307,083.58, and claims scheduled to be discharged without payment as $307,083.58. Bankr. Dkt. No. 17. (Ex. A.)

Creditor is not the Chapter 7 Trustee.

If the Trustee believed there was an administrable estate asset or a basis to revisit estate administration, the Trustee could raise that issue. Creditor should not be permitted to litigate speculative issues concerning administration of the bankruptcy estate.

Creditor's argument concerning disclosed past-due support is particularly inequitable. Debtor disclosed the past-due support on Schedule A/B and explained that the support was owed, but collection was uncertain, enforcement proceedings were ongoing, payments were not being received in full, and the asset was contingent and presently uncollectible. Creditor has already raised the same trustee/estate theory in the family court contempt proceeding. The family court declined to treat Creditor's bankruptcy-estate theory as a defense to the contempt proceeding, observed that no Trustee was before it asserting such a claim, and stated that the Trustee could raise the issue if appropriate. The family court found Debtor credible, found Creditor guilty of twenty counts of contempt for failure to pay court-ordered child support, and ordered Creditor to pay $125,954.29 as and for child-support arrears. (Ex. C.) As of this filing, Creditor remains in arrears on court-ordered child support in the amount of $161,652.48. (Ex. E.) Creditor also owes spousal-support arrears in the principal amount of $41,250.00, plus statutory interest calculated at $17,810.97 as of June 3, 2026. (Ex. F.) Creditor should not be permitted to create support arrears through willful nonpayment and then use those same arrears as a basis to accuse Debtor of bankruptcy misconduct or delay lien-avoidance relief.

Creditor's allegations regarding payment applications likewise do not support denial or continuance of the motions. Debtor has clarified Schedule A/B to list Cash App, Apple Cash, Venmo, and DoorDash Crimson. (Ex. R.) The only nonzero added value is an inactive Cash App balance of $8.35. That clarification does not create equity in the Property, does not alter the homestead exemption, does not change the Trustee's no-distribution determination, and does not affect the § 522(f) impairment analysis.

Finally, Creditor's assertions regarding the Property's condition are speculative and lack foundation. Creditor has not inspected the Property, has not been inside the Property during Debtor's ownership, and relies on assumptions drawn from unauthenticated online images rather than competent valuation evidence. The actual record reflects long-standing unfinished construction resulting from an abandoned renovation project, including an incomplete primary bathroom and damaged flooring, repeated water intrusion events, deferred repairs, and property conditions existing on or before the petition date. Creditor's speculation does not establish fair market value and does not defeat lien avoidance.

For these reasons, Creditor's Opposition should be overruled, and Debtor's Motions to Avoid Judicial Liens should be granted.

# II. LEGAL STANDARD

Section 522(f)(1)(A) authorizes a debtor to avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that the lien impairs an exemption to which the debtor would have been entitled. 11 U.S.C. § 522(f)(1)(A).

Section 522(f)(2)(A) provides the statutory impairment formula. A judicial lien impairs an exemption to the extent that the sum of: (1) the judicial lien; (2) all other liens on the property; and (3) the amount of the exemption that the debtor could claim if there were no liens on the property, exceeds the value of the debtor's interest in the property in the absence of liens. 11 U.S.C. § 522(f)(2)(A).

**In the Ninth Circuit, when multiple judicial liens are subject to avoidance under § 522(f), they are analyzed sequentially from junior to senior, and a judicial lien previously avoided is excluded from the impairment calculation for the remaining liens. *Bank of America Nat'l Trust & Sav. Ass'n v. Hanger (In re Hanger)*, 196 F.3d 1292, 1295–97 (9th Cir. 1999).**

For purposes of § 522, "value" means fair market value as of the date the bankruptcy petition was filed. 11 U.S.C. § 522(a)(2). Debtor filed this Chapter 7 case on February 17, 2026. Accordingly, the relevant valuation date is February 17, 2026.

Property claimed as exempt is exempt unless a party in interest timely objects. 11 U.S.C. § 522(l). Federal Rule of Bankruptcy Procedure 4003(b)(1) establishes the ordinary deadline for objections to exemptions. Rule 4003(d)(2), however, separately permits a creditor defending against a motion under § 522(f) to challenge the validity of the exemption for purposes of the lien-avoidance proceeding. Fed. R. Bankr. P. 4003(d)(2).

# III. ARGUMENT

## *A. The Bankruptcy Record Supports Debtor's Claimed Homestead Exemption and Confirms That the Estate Was Fully Administered.*

Debtor claimed a California homestead exemption in the amount of $900,000.00 on Schedule C. No party in interest filed a general objection to that exemption within the period prescribed by Federal Rule

of Bankruptcy Procedure 4003(b)(1). Although Rule 4003(d)(2) permits Creditor to challenge the validity of the exemption for purposes of opposing lien avoidance, Creditor bears the burden of proving that the exemption was not properly claimed. Fed. R. Bankr. P. 4003(c), (d)(2).

The bankruptcy record provides substantial procedural context supporting Debtor's position. Debtor received her Chapter 7 discharge on June 1, 2026. On June 9, 2026, Chapter 7 Trustee Timothy Yoo filed a Report of No Distribution certifying that he had made a diligent inquiry into Debtor's financial affairs and the location of estate property; that there was no property available for distribution over and above property exempted by law; and that the estate had been fully administered. Bankr. Dkt. No. 17.

The Trustee's Report identified "Assets Abandoned" as $217.08, "Assets Exempt" as $900,000.00, "Claims Scheduled" as $307,083.58, and claims scheduled to be discharged without payment as $307,083.58. Bankr. Dkt. No. 17. (Ex. A.)

Debtor does not contend that the Trustee's Report adjudicates the amount or validity of the exemption for purposes of § 522(f), nor that it independently determines petition-date fair market value. It nevertheless confirms that the appointed fiduciary investigated the estate, concluded that no nonexempt property was available for distribution, and certified that administration was complete.

Creditor is not the Chapter 7 Trustee. His collateral allegations concerning alleged estate assets do not themselves determine the validity of the homestead exemption, establish additional equity in the Property, or defeat the impairment calculation prescribed by 11 U.S.C. § 522(f).

### *B. Creditor's Child-Support Argument Misstates the Record and Is Further Undermined by His Own Inequitable Conduct.*

Creditor argues that Debtor concealed or improperly valued a child-support receivable. The bankruptcy record establishes otherwise. Debtor affirmatively disclosed the existence of unpaid child support on Schedule A/B, Item 29, and explained that the receivable was assigned a present value of **$0.00** because collection was uncertain, enforcement proceedings remained ongoing, payments were not being received in full, and Debtor was unable to personally collect the arrears despite extensive collection efforts.

This precise issue was examined during the parties' May 12, 2026 contempt trial. After hearing Debtor's testimony concerning the valuation of the child-support receivable, Los Angeles County Superior Court Judge Melissa C. Lyons expressly found Debtor's explanation credible, stating (Ex. D.):

**"...the Court finds credible Ms. Rosenlund's explanation as to why she put a zero amount... based on her inability to personally collect the funds given her prior efforts to collect the funds."**

Creditor also advanced substantially the same bankruptcy-estate theory during that proceeding that he now advances in this Opposition. Creditor argued that the unpaid child-support arrears belonged to the Chapter 7 bankruptcy estate and that Debtor lacked authority to pursue collection without permission from the Chapter 7 Trustee. In response, Judge Lyons observed:

**"This isn't Bankruptcy Court, and there's not a Trustee here to make that claim."**

When Creditor continued to press that argument, Judge Lyons further stated:

**"Okay. Well, if there's an issue, the Trustee can make that claim."**

Judge Lyons further remarked:

**"Typically child support is not something a Trustee can use to pay any aspect of her debt. It belongs to the children, not her."**

These statements arose directly in response to Creditor's presentation of substantially the same bankruptcy-estate theory advanced in this Opposition and provide relevant context for the arguments now before this Court.

Creditor's position is also inequitable. The very child-support arrears that Creditor now characterizes as an improperly valued bankruptcy asset exist because Creditor repeatedly failed to comply with court-ordered support obligations. Following trial, the family court found Debtor's testimony regarding the valuation of the receivable credible and found Creditor guilty of twenty counts of contempt for willfully failing to pay court-ordered child support. The court ordered Creditor to pay **$125,954.29** in child-support arrears, as reflected in the Court's May 12, 2026 Minute Order. (Ex. C.)

Creditor's noncompliance has continued. As of this filing, Creditor remains in arrears on court-ordered child support in the principal amount of **$161,652.48**, according to the Los Angeles County Department of Child Support Services. (Ex. E.) Based upon Debtor's calculation filed in the pending family law proceedings, Creditor remains in arrears on court-ordered spousal support in the principal amount of $41,250.00, together with accrued statutory interest of $17,810.97 through June 3, 2026. (Ex. F.)

Creditor therefore asks this Court to credit an argument built upon circumstances of his own making. Creditor failed to comply with court-ordered support obligations, created substantial arrears, was adjudged guilty of twenty counts of contempt for willful nonpayment, and now seeks to use those same unpaid support obligations as the basis to accuse Debtor of bankruptcy misconduct and to delay relief expressly authorized by 11 U.S.C. § 522(f). Equity does not favor such a result.

The bankruptcy record confirms precisely what Judge Lyons recognized during the contempt proceedings: if the unpaid child-support arrears required administration by the bankruptcy estate, that determination rested with the Chapter 7 Trustee—not with Creditor. As discussed in the following section, the Trustee fully investigated and administered the bankruptcy estate, ultimately filing a Report of No Distribution without asserting the position Creditor now asks this Court to adopt.

### *C. Creditor's Estate-Administration Theory Misstates the Bankruptcy Record and Provides No Basis to Deny Lien Avoidance.*

The Bankruptcy Code assigns responsibility for investigating and administering estate property to the Chapter 7 Trustee—not to an individual judgment creditor. Throughout this bankruptcy case, the Trustee exercised those statutory responsibilities.

Debtor appeared at the initial meeting of creditors on **March 27, 2026**, appeared again at the continued meeting of creditors, answered all questions posed under oath, produced every document requested by the Trustee, and fully cooperated throughout the administration of the bankruptcy estate.

At the Trustee's direction, Bryce Kawata personally inspected the Property on **May 7, 2026**, including the interior, exterior, and garage, as part of the Trustee's investigation concerning valuation and potential administration of estate assets. After Debtor received her Chapter 7 discharge, Debtor requested a copy of the Trustee's Broker Price Opinion ("BPO") from both Mr. Kawata and Trustee Timothy Yoo. Both declined to provide the valuation, explaining that it constituted the Trustee's work product. (Ex. Q.) The existence of the Trustee's independent valuation further confirms that the Trustee's decisions were based upon his own investigation rather than solely upon Debtor's representations.

Following that investigation, Debtor received her Chapter 7 discharge on **June 1, 2026**. The continued meeting of creditors concluded on **June 5, 2026**, and on **June 9, 2026**, the Trustee filed his **Report of No Distribution**. (Bankr. Dkt. No. 17; Ex. A.)

In that Report, the Trustee certified that he had made a diligent inquiry into Debtor's financial affairs and the location of estate property; that there was **no property available for distribution over and above property exempted by law**; that the estate had been **fully administered**; that assets abandoned totaled **$217.08**; that exempt assets totaled **$900,000.00**; and that scheduled claims totaling **$307,083.58** would be discharged without payment.

Those determinations were made after the Trustee's independent investigation—not merely upon Debtor's representations. The Trustee possessed the statutory authority to request additional documentation, examine Debtor under oath, inspect the Property, retain professionals, object to exemptions, seek turnover of estate assets, reopen matters requiring further administration, or otherwise pursue additional relief if warranted. The Trustee elected to do none of those things.

Debtor likewise claimed a **$900,000.00** homestead exemption on Schedule C. No general objection to that exemption was filed within the period prescribed by Federal Rule of Bankruptcy Procedure 4003(b)(1). Debtor recognizes that Rule 4003(d)(2) permits Creditor to challenge the exemption for purposes of defending against a motion under **11 U.S.C. § 522(f)**. Nevertheless, Creditor bears the burden of proving that the exemption was not properly claimed. Creditor's allegations concerning electronic payment applications, financial-account disclosures, or other collateral matters do not satisfy that burden.

Although Rule 4003(d)(2) permits a creditor to challenge an exemption in defending against a motion under § 522(f), the Supreme Court has recognized the importance of timely exemption objections under Rule 4003. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992). Accordingly, while Creditor may litigate exemption issues relevant to these motions, the existence of that limited procedural mechanism does not transform unrelated allegations concerning estate administration into grounds for denying lien-avoidance relief.

Likewise, the Supreme Court has emphasized that the Bankruptcy Code generally permits debtors to claim exemptions as scheduled, subject to the procedures established by the Code and Rules. *Schwab v.*

*Reilly*, 560 U.S. 770, 775–76 (2010). Nothing in Creditor's Opposition demonstrates that Debtor's claimed homestead exemption should be denied under those procedures.

Nor did Debtor's subsequent amendment to Schedule A/B alter the legal analysis. The amendment voluntarily clarified certain financial-account disclosures. (Ex. R.) It did **not** amend Schedule C, alter Debtor's claimed homestead exemption, create additional equity in the Property, reopen administration of the bankruptcy estate, or otherwise affect the statutory impairment analysis required by **11 U.S.C. § 522(f).**

To the extent Creditor accuses Debtor of bankruptcy fraud, perjury, intentional concealment of assets, or other bankruptcy misconduct, those accusations are unsupported by the bankruptcy record and do not determine the statutory elements governing lien avoidance. No complaint objecting to Debtor's discharge or seeking revocation of Debtor's discharge has been filed. More importantly, the Chapter 7 Trustee completed administration of the estate without asserting that Debtor concealed assets, improperly claimed exemptions, or otherwise engaged in bankruptcy misconduct.

Creditor nevertheless asks this Court to disregard the Trustee's completed administration of the bankruptcy estate and substitute Creditor's own speculation regarding alleged undisclosed assets, valuation, exemptions, and estate administration. Nothing presented in Creditor's Opposition demonstrates that the Trustee failed to perform his statutory duties or overlooked property requiring administration.

Accordingly, Creditor's estate-administration arguments provide no factual or legal basis to deny or continue Debtor's Motions to Avoid Judicial Liens under **11 U.S.C. § 522(f).**

### *D. Creditor's Allegations Regarding Electronic Payment Applications and Payment Mechanisms Are Immaterial to the Issues Before the Court.*

Creditor devotes a substantial portion of his Opposition to Debtor's use of electronic payment applications and payment mechanisms, including Cash App, Apple Cash, Venmo, and the DoorDash Crimson card. Those allegations provide no legal basis to deny Debtor's Motions to Avoid Judicial Liens.

As explained in Debtor's accompanying Declaration, Debtor completed her bankruptcy schedules without counsel. Debtor understood Schedule A/B to require disclosure of traditional financial accounts and assets with meaningful value. Debtor did not understand that inactive payment applications, zero-balance digital wallets, or a payment mechanism used solely to receive already-disclosed income should also be separately identified.

After reviewing Creditor's Opposition, Debtor voluntarily amended Schedule A/B to eliminate any possible ambiguity. (Ex. R.) The amendment reflects Debtor's continuing commitment to complete transparency and was not prompted by any request from the Chapter 7 Trustee, any order of this Court, or any determination that Debtor had concealed assets.

The amendment identifies an inactive Cash App account containing a petition-date balance of **$8.35**. Apple Cash and Venmo had no known petition-date balances. The DoorDash Crimson card functioned solely as the payment mechanism through which Debtor received her already-disclosed DoorDash earnings. It was not a separate source of income, and it did not constitute an undisclosed asset.

Most importantly, Creditor never explains how any of these electronic payment applications affect the issues presently before the Court. The amendment does **not**:

- alter Debtor's claimed homestead exemption;
- create additional non-exempt equity in the Property;
- affect the Chapter 7 Trustee's administration of the bankruptcy estate;
- alter the Trustee's Report of No Distribution; or
- change the statutory impairment analysis required by **11 U.S.C. § 522(f).**

Instead, Creditor attempts to transform nominal or zero-balance payment applications into allegations of concealment and bad faith despite the absence of any material impact upon the bankruptcy estate. Debtor's prompt amendment demonstrates the opposite. Upon reviewing Creditor's allegations, Debtor verified the relevant information, voluntarily amended Schedule A/B, and removed any possible ambiguity concerning these electronic payment applications.

Even accepting every factual allegation advanced by Creditor regarding these payment applications, none would alter the statutory elements governing lien avoidance under **11 U.S.C. § 522(f)** or affect the outcome of the present Motions.

Accordingly, Creditor's allegations concerning Cash App, Apple Cash, Venmo, and the DoorDash Crimson card are immaterial to the issues before the Court and provide no legal basis to deny or continue Debtor's Motions to Avoid Judicial Liens.

### *E. Creditor's Property-Condition Allegations Are Speculative, Lack Foundation, and Do Not Rebut Debtor's Petition-Date Valuation.*

Creditor's challenge to Debtor's valuation of the Property fails because it is based almost entirely upon speculation rather than competent evidence.

Creditor has not inspected the Property, has not been inside the Property during Debtor's ownership, and has no personal knowledge concerning its actual condition on the petition date. Instead, Creditor relies upon isolated Facebook Marketplace photographs, online images, and assumptions drawn from cosmetic items depicted in those images. Such materials do not establish the fair market value of the Property as of February 17, 2026, nor do they establish that Debtor completed renovations, materially improved the Property, or intentionally created or exaggerated damage to influence valuation.

The contemporaneous evidence demonstrates otherwise.

Immediately after acquiring the Property (Ex. B.), and before moving into the residence, Debtor retained a contractor to renovate the primary bathroom and refinish all of the hardwood flooring. (Ex. G.) Demolition began before Debtor moved into the Property. The contractor later abandoned the project after completing only portions of the demolition, rough plumbing, and approximately one-half of the bathroom floor tile. (Ex. N.) Likewise, the flooring subcontractors failed to properly complete the hardwood flooring before Debtor moved into the residence. (Ex. O.) Despite Debtor's later efforts to retain another contractor to correct the flooring work, it remained unfinished on the petition date. These unfinished conditions materially affected the Property's condition and value.

Likewise, the Brazilian cherry hardwood flooring had been sanded before Debtor occupied the residence but was never refinished or sealed. The flooring project was abandoned before completion and remained unfinished as of the petition date.

The unfinished conditions throughout the Property were further compounded by multiple significant water-intrusion events occurring during Debtor's ownership. Those events included: (1) a washing-machine drain-line failure that caused the dining-room ceiling to rupture (Ex. H.); (2) a subsequent pinhole plumbing leak that again required removal of the entirety of the dining-room ceiling (Ex. I.); (3) failure of the water heater resulting in flooding throughout the downstairs (Ex. J.); (4) water intrusion into the garage from an adjacent property's plumbing failure (Ex. K.); and (5) the significant exterior water intrusion discovered on February 16, 2026 (Ex. L.)—the evening before Debtor filed her Chapter 7 petition—which flooded the foyer and downstairs, damaged drywall and ceilings, and resulted in documented active mold growth. These cumulative conditions materially affected the Property's petition-date condition and are documented by photographs, videos, contractor records, and the CoreRestore estimate attached to Debtor's Declaration. (Ex. M.)

The ceiling tiles referenced as wainscoting by Creditor were not evidence of a remodel or improvement. They were installed only after a substantial portion of the dining-room ceiling collapsed due to water damage. Because Debtor could not afford to hire a contractor to replace the damaged drywall or professionally restore the ceiling, the damaged area remained without finished ceiling material for approximately one year. Eventually, Debtor and her thirteen-year-old daughter undertook a modest do-it-yourself project to cover the exposed ceiling using inexpensive ceiling tiles. The installation was not professionally performed and was undertaken solely because Debtor lacked the financial means to complete proper repairs. Far from increasing the Property's value, the installation simply concealed exposed framing and damaged drywall until proper repairs could someday be afforded.

Indeed, the very photographs submitted by Creditor are consistent with that reality. Photographs depicting deferred maintenance, unfinished construction, and visible damage are not evidence that the Property was worth more than Debtor reported. If anything, they are consistent with the physical conditions Debtor disclosed and with the petition-date valuation reflected in her bankruptcy schedules. They depict an incomplete and imperfect installation, including missing ceiling tiles and visible irregularities, rather than a professionally completed improvement. Those photographs do not demonstrate increased value; if anything, they corroborate that the Property remained in a state of deferred repair and unfinished condition as of the petition date.

Nor does Creditor identify any appraisal, contractor declaration, engineering report, building inspection, permit record, or other competent evidence establishing that Debtor completed renovations, materially

improved the Property, or understated its value. To Debtor's knowledge, no building permits were obtained during her ownership for the remodeling or improvements suggested by Creditor.

Debtor's petition-date valuation is further corroborated by a bona fide **cash purchase offer of $870,000.00** received on **February 16, 2026**, one day before the bankruptcy petition was filed. (Ex. P.) Although, that prospective purchaser was unaware of the significant exterior water intrusion discovered later that evening, the offer nevertheless provides contemporaneous market evidence of the Property's value immediately before the petition date. The subsequent flooding, documented water intrusion, and active mold growth discovered before the petition was filed further support—rather than undermine—Debtor's good-faith petition-date valuation.

Significantly, the Chapter 7 Trustee independently investigated the Property during administration of the bankruptcy estate before filing a Report of No Distribution certifying that there was no nonexempt property available for distribution over and above that exempted by law. While the Trustee's Report does not independently determine fair market value for purposes of § 522(f), it is consistent with the conclusion that Creditor's speculation concerning the Property does not establish undisclosed equity or an administrable estate asset.

Ultimately, Creditor asks the Court to disregard competent evidence of the Property's actual petition-date condition in favor of assumptions drawn from isolated online photographs. The Bankruptcy Code requires the Court to determine fair market value as of the petition date based upon competent evidence, not conjecture. Creditor's unsupported disagreement with Debtor's valuation does not rebut the evidence presented in support of Debtor's Motions and provides no basis to deny lien avoidance under 11 U.S.C. § 522(f).

*A disagreement with value is not evidence of value.*

The relevant inquiry is not what a fully renovated Redondo Beach residence might command in the marketplace. The relevant inquiry is the fair market value of Debtor's Property in its actual petition-date condition.

Creditor repeatedly characterizes evidence of financial hardship, deferred maintenance, and emergency repairs as evidence of concealed improvements or increased equity. The record demonstrates the opposite.

Creditor's criticism of the unfinished condition of the Property omits the undisputed financial circumstances under which those conditions persisted. Debtor purchased the Property on **November 17, 2021**, the same day the family court entered the parties' permanent financial orders. Immediately thereafter, Debtor undertook necessary renovations in anticipation of moving into the residence. Within weeks, however, Debtor lost the benefit of substantial court-ordered spousal support that had been awarded by the family court, and Creditor ultimately failed to satisfy his continuing support obligations to such an extent that he was later adjudged guilty of twenty counts of contempt. Those financial circumstances materially impaired Debtor's ability to retain replacement contractors, remediate repeated water damage, or complete the abandoned construction projects. The Property's unfinished condition therefore cannot fairly be viewed in isolation from the financial circumstances existing throughout Debtor's ownership.

Contrary to Creditor's characterization, Debtor has never contended that the Property was uninhabitable or without value. Rather, Debtor disclosed its condition in good faith and valued it based upon its actual petition-date condition, including unfinished construction, deferred maintenance, repeated water intrusion, and unrepaired damage. The question before this Court is not whether the Property could someday be worth more after substantial repairs and renovation. The question is its fair market value on **February 17, 2026**.

None of these collateral allegations alters the statutory calculation required by 11 U.S.C. § 522(f). They do not increase the fair market value of the Property, create additional nonexempt equity, invalidate Debtor's claimed homestead exemption, alter the Trustee's administration of the estate, or otherwise affect whether Creditor's judicial liens impair Debtor's exemption. Rather, they invite the Court to resolve disputes beyond the narrow question presented by these motions.

### *F. Application of the Statutory Formula Demonstrates That Each of Creditor's Judicial Liens Fully Impairs Debtor's Homestead Exemption.*

Creditor argues that Debtor improperly applies the impairment formula set forth in 11 U.S.C. § 522(f)(2). The statutory calculation demonstrates otherwise.

Debtor owns the Property without a mortgage or deed of trust. Debtor claimed a homestead exemption of $900,000.00. Debtor's evidence supports a petition-date fair market value of approximately $870,000.00, and Schedule A/B listed the Property at $900,000.00. Under either figure, Creditor's judicial liens fully impair the exemption.

Debtor's petition-date valuation is further supported by a written cash purchase offer of $870,000.00 received on February 16, 2026, one day before the petition date. Considered together with the Property's documented deferred maintenance and unresolved water intrusion existing at that time, the offer constitutes contemporaneous market evidence of the Property's fair market value on the petition date.

Using the $900,000.00 homestead exemption claimed by Debtor, and absent proof by Creditor that a different exemption amount applies for purposes of this contested matter, the claimed exemption equals or exceeds both Debtor's petition-date valuation of approximately $870,000.00 and the $900,000.00 value listed on Schedule A/B.

Accordingly, under either valuation advanced by Debtor, there is no non-exempt equity available to which Creditor's judicial liens may attach without impairing the claimed homestead exemption.

The judicial liens are analyzed from junior to senior in accordance with Ninth Circuit authority. See ***Bank of America Nat'l Trust & Sav. Ass'n v. Hanger (In re Hanger)***, 196 F.3d 1292 (9th Cir. 1999). Consistent with 11 U.S.C. § 522(f)(2)(B), a judicial lien that has already been avoided is not included when calculating impairment of the remaining liens. Accordingly, the liens are analyzed in the following order:

- White Zuckerman Warsavsky Luna & Hunt LLP lien (recorded June 5, 2025);

• Brian Rosenlund's $450.00 lien (recorded July 5, 2023); and

• Brian Rosenlund's three July 11, 2022 liens in reverse instrument-number order.

Consistent with 11 U.S.C. § 522(f)(2)(B), a judicial lien that has already been avoided is not included when calculating impairment of the remaining liens. White Zuckerman Warsavsky Luna & Hunt LLP lien recorded June 5, 2025; Creditor's $450.00 lien recorded July 5, 2023; and Creditor's three July 11, 2022 liens in reverse instrument-number order. Section 522(f)(2)(B) excludes a lien already avoided when the next lien is calculated

Creditor holds four judicial liens with original recorded amounts of $18,825.00, $16,191.00, $10,755.00, and $450.00, for an aggregate original amount of $46,221.00. The Property is also subject to unavoidable tax obligations, including a recorded Franchise Tax Board lien with a near-petition balance of approximately $17,646.10 and delinquent Los Angeles County real-property taxes. Those unavoidable statutory liens further increase impairment under § 522(f)(2)(A), although Debtor's Motions do not depend upon their inclusion because the judicial liens are fully avoidable even without considering them. None of Creditor's four judicial liens secures a domestic support obligation within the meaning of 11 U.S.C. § 523(a)(5).

Creditor's priority argument therefore presents no mathematical or legal basis to preserve any portion of his judicial liens. Whether the Court applies Debtor's petition-date valuation of approximately $870,000.00 or the $900,000.00 scheduled value, the statutory formula produces the same result: each of Creditor's judicial liens fully impairs Debtor's claimed homestead exemption and is avoidable under 11 U.S.C. § 522(f).

The numerical lien-impairment calculations are set forth in Debtor's original Motions to Avoid Judicial Liens and are incorporated herein by reference. Creditor identifies no mathematical error in those calculations. Rather, his argument concerns only the legal sequence in which the judicial liens should be analyzed under 11 U.S.C. § 522(f)(2). Applying the sequencing required by *Hanger* produces the same result reached in Debtor's original motions: each of Creditor's judicial liens fully impairs Debtor's properly claimed homestead exemption and is avoidable under 11 U.S.C. § 522(f). Accordingly, there is no genuine dispute concerning the numerical calculations themselves. The dispute is solely one of legal application, and binding Ninth Circuit authority confirms that Debtor has correctly applied the statutory formula.

### *G. Creditor's Opposition Constitutes an Improper Collateral Attack on the Administration of the Bankruptcy Estate and Matters Already Addressed in Other Proceedings.*

Throughout his Opposition, Creditor attempts to transform these straightforward motions under 11 U.S.C. § 522(f) into a broad collateral inquiry concerning Debtor's bankruptcy schedules, family-law proceedings, support enforcement, the condition of Debtor's residence, electronic payment applications, and unrelated personal matters. Those issues either have already been addressed during the

administration of this bankruptcy estate or are properly addressed, if at all, in other proceedings. None changes the statutory lien-avoidance analysis before this Court.

The administration of Debtor's bankruptcy estate was entrusted to the Chapter 7 Trustee. The Trustee examined Debtor under oath at the continued meeting of creditors, investigated Debtor's financial affairs, evaluated the estate, and ultimately filed a Report of No Distribution certifying that there was no property available for distribution over and above property exempted by law and that the estate had been fully administered. Creditor's disagreement with the Trustee's administration does not authorize him to relitigate those issues through an opposition to Debtor's motions to avoid judicial liens.

Likewise, Creditor's repeated assertions concerning child-support arrears have already been presented in family court. During the May 12, 2026 contempt proceedings, Creditor advanced substantially the same bankruptcy-estate theory he now raises before this Court. The family court declined to accept that theory as a basis to avoid adjudication of the contempt counts. The family court found Debtor credible, found Creditor guilty of twenty counts of contempt for willfully failing to comply with his court-ordered child-support obligations, and entered its findings and orders accordingly. Having failed to prevail on that theory in family court, Creditor now repackages substantially the same arguments in an attempt to defeat Debtor's lien-avoidance motions.

Creditor's conduct throughout the bankruptcy proceedings reflects the same pattern. As described in Debtor's Declaration, during the continued meeting of creditors under 11 U.S.C. §341, Creditor attempted to divert the Trustee's examination toward Debtor's private personal relationships rather than issues material to estate administration. Debtor objected that those matters were inappropriate for the meeting of creditors and apologized to the Trustee for the interruption. The present Opposition follows that same pattern by repeatedly diverting attention from the limited statutory issues governing lien avoidance.

Creditor concludes his Opposition by asserting that he does not seek to force the sale of the residence in which the parties' children reside. Respectfully, that assertion is difficult to reconcile with the objective procedural history of this litigation.

Within thirteen days after entry of the permanent support orders, Creditor ceased paying court-ordered spousal support. His noncompliance later expanded to child support, ultimately resulting in findings of guilt on twenty counts of contempt for willful failure to pay court-ordered child support. As of this filing, Creditor remains indebted to Debtor for court-ordered support obligations totaling at least **$220,713.45**, consisting of **$161,652.48** in child-support arrears, **$41,250.00** in spousal-support principal, and **$17,810.97** in accrued statutory interest on the spousal-support obligation calculated through June 3, 2026. These are not historical obligations. They remain unpaid today while Creditor simultaneously seeks to preserve judicial liens against Debtor's exempt residence.

Less than one year after entry of the Judgment of Dissolution, Creditor recorded three judicial liens against Debtor's residence, with the remaining lien recorded approximately one year later. Creditor now opposes Debtor's Motions to Avoid those liens while simultaneously seeking to preserve the continued encumbrance of Debtor's homestead.

These are objective facts reflected in the parties' litigation history. While Creditor now represents that he does not seek to force the sale of the residence, his litigation conduct has consistently sought to preserve the judicial liens that impair Debtor's homestead exemption and, if left in place, continue to encumber the residence occupied by Debtor and the parties' children.

The issues before this Court are considerably narrower than Creditor's Opposition suggests. A motion under 11 U.S.C. §522(f) requires the Court to determine whether Debtor is entitled to the claimed exemption and whether Creditor's judicial liens impair that exemption under the statutory formula established by Congress. Creditor's Opposition instead invites the Court to resolve disputes concerning family-law proceedings, support enforcement, bankruptcy administration, property maintenance, electronic payment applications, and Debtor's personal affairs. Those collateral matters do not expand the scope of the issues presented by these Motions

None of Creditor's collateral allegations alters the statutory analysis required by 11 U.S.C. § 522(f). They do not increase the fair market value of the Property, create additional nonexempt equity, invalidate Debtor's claimed homestead exemption for purposes of these motions, reopen the exemption objection period, disturb Debtor's Chapter 7 discharge, alter the Chapter 7 Trustee's administration of the estate, or undermine the Trustee's Report of No Distribution. Nor do they otherwise affect whether Creditor's judicial liens impair Debtor's homestead exemption under the Bankruptcy Code. Rather, Creditor's Opposition invites the Court to resolve collateral disputes that fall outside the limited statutory question presented by these motions.

Ultimately, Creditor's Opposition instead invites the Court to substitute speculation for evidence, collateral disputes for the statutory requirements of 11 U.S.C. § 522(f), and accusations for the actual administration of Debtor's bankruptcy estate. The Bankruptcy Code requires none of those things. The record before this Court demonstrates that Debtor disclosed her assets, claimed her exemptions, appeared for examination by the Chapter 7 Trustee, received her discharge, and that the Trustee completed the administration of the estate and filed a Report of No Distribution after determining there was no nonexempt property available for distribution. Creditor's disagreement with those outcomes does not alter the statutory impairment analysis or provide a basis to deny Debtor's Motions to Avoid Judicial Liens.

# IV. CONCLUSION

For all of the foregoing reasons, Creditor Brian Rosenlund has failed to present either a factual or legal basis to deny Debtor's Motions to Avoid Judicial Liens under **11 U.S.C. § 522(f).**

The undisputed bankruptcy record demonstrates that:

- Debtor fully disclosed her financial affairs and appeared for examination by the Chapter 7 Trustee;
- Debtor claimed a **$900,000.00** California homestead exemption on Schedule C;
- No general objection to Debtor's claimed exemption was filed within the period prescribed by Federal Rule of Bankruptcy Procedure 4003(b)(1); although Creditor may challenge the exemption for purposes of § 522(f), he bears the burden of proving that the exemption was not properly claimed;

- Debtor received her Chapter 7 discharge on **June 1, 2026**;
- The Chapter 7 Trustee fully investigated and administered the bankruptcy estate;
- The Trustee filed a **Report of No Distribution**, certifying that there was no property available for distribution over and above property exempted by law and that the estate had been fully administered; and
- Debtor thereafter voluntarily amended Schedule A/B to clarify certain electronic payment applications. That amendment did not alter Debtor's claimed homestead exemption, create additional non-exempt equity, reopen administration of the bankruptcy estate, or otherwise affect the statutory impairment analysis required by **11 U.S.C. § 522(f).**

Rather than addressing the statutory requirements governing lien avoidance, Creditor's Opposition relies upon speculation, collateral family-law disputes, personal accusations, electronic payment applications, property-condition arguments, and allegations concerning bankruptcy administration that either were previously disclosed, were investigated by the Chapter 7 Trustee, were addressed during administration of the bankruptcy estate, or have no material effect upon the issues presented by these Motions.

Most importantly, Creditor never rebuts the statutory impairment analysis itself. Instead, Creditor repeatedly asks this Court to substitute collateral disputes for the mathematical formula established by Congress in **11 U.S.C. § 522(f)**. The Bankruptcy Code requires no such inquiry.

**The Opposition therefore fails to identify any genuine dispute regarding the statutory elements required for relief under § 522(f).**

Applying the statutory impairment formula, and using the **$900,000.00** homestead exemption claimed by Debtor unless Creditor satisfies his burden of establishing that a different exemption amount applies for purposes of this contested matter, each of Creditor's judicial liens fully impairs Debtor's homestead exemption under either Debtor's petition-date valuation of approximately **$870,000.00** or the **$900,000.00** value listed on Schedule A/B. Under either valuation, there is no non-exempt equity to which Creditor's judicial liens may attach without impairing Debtor's exemption. Accordingly, each judicial lien is avoidable to the full extent permitted by **11 U.S.C. § 522(f).**

Accordingly, Debtor respectfully requests that this Court:

1. **Overrule Creditor Brian Rosenlund's Opposition in its entirety;**
2. **Grant Debtor's Motions to Avoid Judicial Liens filed at Docket Nos. 20, 21, 22, and 23;**
3. **Enter Orders avoiding each judicial lien in its entirety, or alternatively to the full extent the Court determines each lien impairs Debtor's homestead exemption pursuant to 11 U.S.C. § 522(f);** and
4. **Grant such other and further relief as the Court deems just and proper.**

Respectfully submitted,

Crystal H Rosenlund

Crystal Glenda Rosenlund
Debtor, Pro Se

CRYSTAL ROSENLUND
1916 Rockefeller Lane, Unit7
Redondo Beach, CA 90278
(310)697-9722
crystalrosenlund@icloud.com
In Pro Per

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re:

CRYSTAL GLENDA ROSENLUND,

Debtor.

Case No.: 2:26-bk-11423-BR

CHAPTER 7

**TABLE OF CONTENTS**
**(In Support of Debtor's Reply to Creditor Brian Rosenlund's Opposition to Debtor's Motions to Avoid Judicial Liens Pursuant to 11 U.S.C. § 522(f) (Dkt. Nos. 20, 21, 22, and 23))**

Date: JULY 28, 2026
Time: 10:00 A.M.
Courtroom: 1668 (in person hearing)
EDWARD ROYBAL BUILDING –
255 E. TEMPLE STREET
LOS ANGELES, CA 90012
Judge: HONORABLE BARRY RUSSELL

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................ 1

II. LEGAL STANDARD ........................................................ 3

III. ARGUMENT ........................................................ 3

A. The Bankruptcy Record Supports Debtor's Claimed Homestead Exemption and Confirms That the Estate Was Fully Administered ........................................ 3

B. Creditor's Child-Support Argument Misstates the Record and Is Further Undermined by His Own Inequitable Conduct ........................................ 4

C. Creditor's Estate-Administration Theory Misstates the Bankruptcy Record and Provides No Basis

to Deny Lien Avoidance ............................................ 5

D. Creditor's Allegations Regarding Electronic Payment Applications and Payment Mechanisms Are Immaterial to the Issues Before the Court ....................... 7

E. Creditor's Property-Condition Allegations Are Speculative, Lack Foundation, and Do Not Rebut Debtor's Petition-Date Valuation ................................... 8

F. Application of the Statutory Formula Demonstrates That Each of Creditor's Judicial Liens Fully Impairs Debtor's Homestead Exemption ............................... 10

G. Creditor's Opposition Constitutes an Improper Collateral Attack on the Administration of the Bankruptcy Estate and Matters Already Addressed in Other Proceedings ............................................ 11

IV. CONCLUSION ........................................................... 13

CRYSTAL GLENDA ROSENLUND
1916 Rockefeller Lane, Unit 7
Redondo Beach, CA 90278
(310)697-9722
crystalrosenlund@icloud.com
In Pro Per

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re:

CRYSTAL GLENDA ROSENLUND,

Debtor.

Case No.: **2:26-bk-11423-BR**

CHAPTER 7

**TABLE OF AUTHORITIES**
**(In Support of Debtor's Reply to Creditor Brian Rosenlund's Opposition to Debtor's Motions to Avoid Judicial Liens Pursuant to 11 U.S.C. § 522(f) (Dkt. Nos. 20, 21, 22, and 23))**

Date: JULY 28, 2026
Time: 10:00 A.M.
Courtroom: 1668 (in person hearing)
EDWARD ROYBAL BUILDING –
255 E. TEMPLE STREET
LOS ANGELES, CA 90012
Judge: HONORABLE BARRY RUSSELL

**TABLE OF AUTHORITIES**

*Cases*

Bank of America Nat'l Trust & Sav. Ass'n v. Hanger (In re Hanger),
196 F.3d 1292 (9th Cir. 1999) ............................................ II, F

Schwab v. Reilly,
560 U.S. 770 (2010) ...................................................... C

Taylor v. Freeland & Kronz,
503 U.S. 638 (1992) ...................................................... C

**Statutes**


11 U.S.C. § 522(a)(2) .................................................... II

11 U.S.C. § 522(f) .................................................... passim

11 U.S.C. § 522(f)(1)(A) ............................................ II, F

11 U.S.C. § 522(f)(2) ................................................ II, F

11 U.S.C. § 522(f)(2)(A) ............................................ II, F

11 U.S.C. § 522(f)(2)(B) ............................................... F

11 U.S.C. § 522(l) ...................................................... II

11 U.S.C. § 523(a)(5) .................................................... F


**Federal Rules of Bankruptcy Procedure**


Fed. R. Bankr. P. 4003(b)(1) ........................................ II, C

Fed. R. Bankr. P. 4003(d)(2) ........................................ II, C

CRYSTAL GLENDA ROSENLUND
1916 Rockefeller Lane, Unit 7
Redondo Beach, CA 90278
(310)697-9722
crystalrosenlund@icloud.com
In Pro Per

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re:

CRYSTAL GLENDA ROSENLUND,

Debtor.

Case No.: **2:26-bk-11423-BR**

CHAPTER 7

**DECLARATION OF CRYSTAL GLENDA ROSENLUND**

**(In Support of Debtor's Reply to Creditor Brian Rosenlund's Opposition to Debtor's Motions to Avoid Judicial Liens Pursuant to 11 U.S.C. § 522(f) (Dkt. Nos. 20, 21, 22, and 23))**

Date: JULY 28, 2026
Time: 10:00 A.M.
Courtroom: 1668 (in person hearing)
EDWARD ROYBAL BUILDING –
255 E. TEMPLE STREET
LOS ANGELES, CA 90012
Judge: HONORABLE BARRY RUSSELL

**IN SUPPORT OF DEBTOR'S REPLY TO CREDITOR BRIAN ROSENLUND'S OPPOSITION TO MOTIONS TO AVOID JUDICIAL LIENS PURSUANT TO 11 U.S.C. § 522(f) (DKT. NOS. 20, 21, 22, AND 23)**

I, **Crystal Glenda Rosenlund**, declare as follows:

## I. BACKGROUND

**1.** I am the Debtor in the above-captioned Chapter 7 bankruptcy case. I am representing myself in this matter. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would competently testify thereto.

**2.** I submit this Declaration in support of my Reply to Creditor Brian Rosenlund's Opposition to my Motions to Avoid Judicial Liens filed at Docket Nos. 20, 21, 22, and 23. The facts set forth herein apply equally to each of those motions unless otherwise stated.

**3.** Unless otherwise stated, the facts contained in this Declaration are based upon my personal knowledge.

## II. ADMINISTRATION OF MY CHAPTER 7 BANKRUPTCY CASE

**4.** I filed my voluntary Chapter 7 bankruptcy petition on February 17, 2026.

**5.** Throughout the administration of my Chapter 7 case, I fully cooperated with Chapter 7 Trustee Timothy Yoo and his staff.

**6.** I appeared at each scheduled meeting of creditors, answered the Trustee's questions under oath, and provided the Trustee with the information and documentation he requested during his administration of the estate.

**7.** During the administration of my bankruptcy case, I provided the Trustee and his staff with supplemental documents they requested concerning my residence, including information regarding recorded judicial liens, property taxes, and other encumbrances affecting the Property.

**8.** On June 1, 2026, I received my Chapter 7 discharge.

**9.** On June 9, 2026, Trustee Timothy Yoo filed his Report of No Distribution, certifying that he had made a diligent inquiry into my financial affairs and the location of property belonging to the estate; that there was no property available for distribution over and above property exempted by law; and that the estate had been fully administered. *A true and correct copy of the Trustee's Report of No Distribution is attached as* **Exhibit A.**

## III. DISCLOSURE OF PAST-DUE CHILD SUPPORT

**10.** At the time I filed my Chapter 7 petition, Brian Rosenlund owed substantial court-ordered child support arrears arising from orders entered by the Los Angeles County Superior Court.

**11.** On Schedule A/B, Item 29, I disclosed the existence of those past-due child support arrears. I did not conceal that asset from the Trustee, creditors, or the Court.

**12.** When I completed my schedules, I understood the past-due child support to represent court-ordered support intended for the care and benefit of my minor children. I also understood that, despite the existence of the arrears, collection remained uncertain because Mr. Rosenlund had repeatedly failed to comply with the existing support orders despite ongoing enforcement efforts.

**13.** Because I could not reliably collect those amounts at the time I filed bankruptcy, I assigned the receivable a present value of $0.00 and included an explanatory note on Schedule A/B describing why I believed the arrears had no presently realizable value.

**14.** My intent was to fully disclose the existence of the child-support arrears while accurately describing the uncertainty of collection and my inability to realize any present economic value from those unpaid obligations at the time I filed bankruptcy.

## IV. ELECTRONIC PAYMENT APPLICATIONS

**15.** I completed my bankruptcy schedules without the assistance of legal counsel.

**16.** At the time I completed Schedule A/B, I understood the form to require disclosure of my bank accounts, financial accounts, and assets containing meaningful balances.

**17.** I did not understand that inactive payment applications, zero-balance electronic payment wallets, or a payment mechanism used solely to receive already-disclosed DoorDash earnings should also be separately listed.

**18.** My DoorDash income itself was disclosed throughout my bankruptcy case.

**19.** The DoorDash Crimson card was simply the payment mechanism through which DoorDash transmitted those already-disclosed earnings.

**20.** I did not intend to conceal any financial account, payment application, or asset from the Trustee, my creditors, or the Court.

**21.** After reviewing Creditor Brian Rosenlund's Opposition, I immediately reviewed each electronic payment application referenced in his filing.

**22.** After reviewing the issues raised in Creditor's Opposition, I voluntarily amended Schedule A/B to clarify those disclosures and eliminate any possible ambiguity. *A true and correct copy of my Amended Schedule A/B is attached as* **Exhibit R.**

**23.** The amendment disclosed an inactive Cash App balance of $8.35.

**24.** To the best of my knowledge, Apple Cash and Venmo had no petition-date balances.

**25.** I made the amendment voluntarily in the interest of complete transparency and not because it had been requested by the Trustee or ordered by the Court.

## V. CONDUCT AT THE INITIAL § 341 MEETING OF CREDITORS

**26.** On **March 27, 2026**, Brian Rosenlund appeared by Zoom at my initial meeting of creditors conducted pursuant to 11 U.S.C. § 341.

**27.** During the meeting, Mr. Rosenlund began questioning me about my live-in partner and demanding information concerning my private personal relationship.

**28.** Those subjects were unrelated to the Trustee's examination of my assets, liabilities, financial affairs, or the administration of my bankruptcy estate.

**29.** I responded that the questions were inappropriate because they concerned my private personal relationship rather than any issue before the Trustee. I then apologized to the Trustee because I believed Mr. Rosenlund's questions were outside the proper scope of the meeting of creditors and had diverted the Trustee's examination.

**30.** The Trustee advised Mr. Rosenlund, in substance, that the meeting of creditors was not the appropriate forum for personal matters unrelated to the administration of the bankruptcy estate.

**31.** Following the Trustee's direction, I continued answering the Trustee's questions under oath and fully cooperated with the examination.

## VI. CONDITION OF THE PROPERTY

**32.** I have resided at the Property continuously since shortly after acquiring it. Since acquiring the Property, I have experienced significant financial hardship that materially limited my ability to complete repairs, replace contractors, remediate repeated water damage, or finish previously commenced renovation projects. *A true and correct copy of the Grant Deed is attached as* **Exhibit B**.

**33.** At the time I filed my Chapter 7 petition on February 17, 2026, the Property had substantial deferred maintenance and multiple unresolved conditions affecting its overall marketability and value.

### *A. History of Water Damage and Deferred Repairs Affecting Petition-Date Value*

**34.** On or about **March 29, 2023**, the washing machine drain backed up due to deteriorated cement drain piping requiring maintenance. The resulting water intrusion damaged the dining room ceiling below, creating a large water bubble and opening in the ceiling. *A true and correct copy of the photographs is attached collectively as* **Exhibit H**.

**35.** On **May 4, 2023**, a separate water intrusion occurred when a pinhole leak developed in the home's water supply line. The leak caused extensive additional damage to the dining room ceiling. I photographed the active leak, the plumbing repair, and the condition of the ceiling after damaged materials were removed to access the leaking pipe. *A true and correct copy of the photographs is attached collectively as* **Exhibit I.**

**36.** Although the plumbing leak was repaired, I could not afford professional reconstruction of the ceiling. For approximately one year, portions of the dining room ceiling remained open and unfinished, exposing ceiling joists.

**37.** Eventually, my daughter and I attempted to improve the appearance of the damaged area ourselves by installing decorative ceiling tiles as a do-it-yourself project. My daughter was approximately thirteen years old at the time. Neither of us had experience performing this type of work, and the installation was not professionally completed.

**38.** On or about **July 11, 2024**, the home's water heater failed, flooding a substantial portion of the downstairs living area and causing additional interior water damage. *A true and correct copy of the photographs is attached collectively as* **Exhibit J.**

**39.** On or about **January 11, 2026**, another water intrusion occurred after a pinhole leak developed in plumbing serving the adjoining property. Although the source of the leak was outside my plumbing system and outside my control, the resulting water intrusion affected my garage. *A true and correct copy of the photograph is attached collectively as* **Exhibit K.**

**40.** On **February 16, 2026**, the day before I filed my Chapter 7 bankruptcy petition, the Property experienced another significant water intrusion event. Water entered the residence from the exterior near the front entry and infiltrated through the area surrounding the front door, electrical switch locations, and the water heater closet, flooding much of the downstairs living area. *A true and correct copy of the photographs is attached collectively as* **Exhibit L.**

**41.** Because the February 16, 2026 flooding required immediate mitigation, I retained CoreRestore, which responded to the Property on February 17, 2026.

**42.** CoreRestore documented extensive water damage affecting the ceilings and walls in the common areas of the home as well as the entire downstairs and also documented active mold growth in portions of the affected areas. *A true and correct copy of the CoreRestore estimate is attached as* **Exhibit M.**

### *B. Other Incomplete Construction and Deferred Repairs*

**43.** Immediately after I acquired title to the Property on November 17, 2021, as reflected in the Grant Deed (**Exhibit B**), and before moving into the residence, I retained a contractor to renovate the primary bathroom and refinish the entirety of the hardwood flooring. The contractor provided an initial written proposal dated **November 19, 2021**, followed by a final written proposal dated **January 12, 2022**, after obtaining plumbing and electrical pricing. *True and correct copies of those proposals are attached collectively as* **Exhibit G**.

**44.** Demolition of the primary bathroom began before I moved into the Property. Progress on the renovation was interrupted, in part, after I contracted COVID-19. After work resumed, the contractor completed portions of the demolition, rough plumbing, and approximately one-half of the bathroom floor tile installation, but substantial portions of the project remained incomplete.

**45.** The contractor also retained flooring subcontractors to sand and refinish portions of the Brazilian cherry hardwood flooring. The flooring work was not properly completed before I moved into the Property. After my family's belongings had already been moved into the home, I retained another contractor in an effort to correct and complete the flooring work. Despite those efforts, the flooring was never properly completed and remained unfinished on the February 17, 2026 *petition date. A true and correct copy of the photographs is attached collectively as* **Exhibit O.**

**46.** By approximately February 2022, after I had paid the contractor the full contract amount, he ceased work, abandoned the project, left tools and equipment at the Property, failed to return my telephone calls, and never returned to complete the renovation. As a result, the primary bathroom remained

without completed fixtures, cabinetry, vanity, shower enclosure, and other finish work throughout my ownership and remained substantially incomplete on the February 17, 2026 *petition date. A true and correct copy of the photographs is attached collectively as* **Exhibit N.**

**47.** Because of my financial circumstances, including the loss of the court-ordered spousal support that first became due on December 1, 2021, and the subsequent deterioration of my financial resources resulting from continuing unpaid support obligations, I was unable to hire another contractor to complete the abandoned bathroom renovation or fully correct the unfinished flooring before filing my Chapter 7 petition. As a result, those conditions remained unresolved on the February 17, 2026 *petition date.*

**48.** The unfinished bathroom, incomplete flooring, repeated water intrusion, unresolved repairs, and other deferred maintenance collectively affected the overall condition, marketability, and fair market value of the Property as it existed on the February 17, 2026 *petition date.*

## VII. PETITION-DATE VALUATION OF THE PROPERTY

**49.** The value I reported for the Property in my bankruptcy schedules represented my good-faith opinion of the fair market value of the Property as of the *petition date.*

**50.** On February 16, 2026, before the exterior water intrusion described above occurred, I received a written cash purchase offer for the Property in the amount of $870,000.00. *A true and correct copy of the written cash purchase offer is attached as* **Exhibit P.**

**51.** That offer reflected the amount an actual purchaser was willing to pay for the Property immediately before the *petition date* based upon its then-existing observable condition. The prospective purchaser was unaware of the significant exterior water intrusion that occurred later the same day.

**52.** Later that same day, the day before I filed my Chapter 7 petition, the Property experienced the significant exterior water intrusion described above, further worsening its condition immediately before the *petition date.*

**53.** Based upon the condition of the Property as it existed on the February 17, 2026 *petition date*—including both its pre-existing deferred maintenance and the additional water intrusion occurring the evening before filing—I believed the value reported in my bankruptcy schedules was reasonable and made in good faith.

**54.** The February 16, 2026 exterior water intrusion was not the result of a condition that had been permanently repaired before I filed bankruptcy. Although emergency inspection was performed, the source of the exterior water intrusion remained unresolved on the *petition date.*

**55.** Following the *petition date*, the homeowners' association insurance carrier addressed only emergency mitigation. The claim was subsequently closed because the remediation costs did not exceed the applicable deductible. To my knowledge, no repairs have been made to eliminate the source of the exterior water intrusion.

**56.** The Property experienced additional water intrusion during rainfall in approximately April 2026, confirming that the underlying condition had not been corrected. As of the date of this Declaration, I understand that the homeowners' association president has indicated that a roofing contractor will investigate the source of the leak, but no permanent repair has yet been completed.

**57.** Based upon the Property's condition on the *petition date*, including the unresolved exterior water intrusion, repeated history of water damage, deferred maintenance, and incomplete construction, I believed the value reported in my bankruptcy schedules was reasonable and made in good faith.

**58.** I did not intentionally undervalue the Property, conceal equity, or attempt to mislead the Trustee or this Court.

**59.** Throughout my Chapter 7 case, I fully cooperated with Chapter 7 Trustee Timothy Yoo. I appeared at each continued meeting of creditors, answered questions under oath, and timely provided the documents and information requested by the Trustee.

## VIII. ADMINISTRATION OF THE BANKRUPTCY ESTATE

**60.** Throughout the administration of my Chapter 7 case, I timely responded to requests from the Trustee and his staff, including requests communicated by Broker appointed by the Trustee, Bryce Kawata. I provided the documents and information requested concerning my financial affairs and the Property and appeared at each continued meeting of creditors.

**61.** On May 7, 2026, Bryce Kawata, acting on behalf of Chapter 7 Trustee Timothy Yoo, personally inspected the interior and exterior of the Property, including the garage of the Property as part of the Trustee's investigation into the bankruptcy estate.

**62.** After my Chapter 7 discharge was entered, I requested a copy of the Trustee's Broker Price Opinion ("BPO") or other property valuation from both Bryce Kawata and Trustee Timothy Yoo. *True and correct copies of those email communications are attached collectively as* **Exhibit Q.**

**63.** Mr. Kawata advised me in substance that he was not authorized to provide the Trustee's valuation materials and that I would need to obtain any such information through legal counsel.

**64.** Trustee Timothy Yoo separately responded that the valuation constituted the Trustee's work product and would not be provided, stating:

*"That is our work product. You will need to get your own valuation. We consider this file closed on my end. Thank you."*

**65.** Although I was not provided the Trustee's valuation because it was considered work product, the Trustee nevertheless completed his investigation, concluded administration of the estate, and thereafter filed his Report of No Distribution. At no time did the Trustee request that I amend my valuation of the Property or advise me that my reported value was inaccurate.

**66.** Throughout my Chapter 7 case, I attempted to answer every question asked of me, provide every document requested by the Trustee and his staff, and cooperate fully with the administration of my bankruptcy estate. Whenever I later concluded that additional clarification might be helpful, including

with respect to certain electronic payment applications, I voluntarily amended my schedules. At no time did I intend to conceal assets or mislead the Trustee or this Court.

**67.** On June 9, 2026, the Trustee filed his Report of No Distribution, certifying that he had made a diligent inquiry into my financial affairs and the location of property belonging to the estate and that ***"there is no property available for distribution from the estate over and above that exempted by law."*** *A true and correct copy is attached as* **Exhibit A.**

## IX. SUMMARY OF FACTS RELEVANT TO THE MOTIONS

**68.** The facts stated in this Declaration are based upon my personal knowledge and the contemporaneous documents attached as exhibits.

**69.** The attached exhibits fairly and accurately depict the conditions, events, and documents described in this Declaration.

**70.** I submit this Declaration in support of my Reply to Creditor Brian Rosenlund's Opposition because it accurately describes the condition of the Property, the administration of my bankruptcy case, and the factual matters relevant to my Motions to Avoid Judicial Liens under 11 U.S.C. § 522(f).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of July, 2026, at Redondo Beach, California.

Crystal G Rosenlund

Crystal Glenda Rosenlund

Debtor, In Pro Per

I Photographs and Video Still Images of May 4, 2023 Pinhole Plumbing Leak, Plumbing Repairs, and Dining Room Ceiling Collapse

J Photographs of July 11, 2024 Water Heater Failure and Resulting Interior Water Damage

K Photograph of January 11, 2026 Water Intrusion into Garage Resulting from Adjacent Property Plumbing Leak

L Photographs of February 16–17, 2026 Exterior Water Intrusion Existing Immediately Before the Petition Date

M CoreRestore Water Mitigation, Mold Assessment, and Repair Estimate

N Photographs of Unfinished Primary Bathroom Existing on the Petition Date

O Photographs of Unfinished Brazilian Cherry Hardwood Flooring Existing on the Petition Date

P Written Cash Purchase Offer for 1916 Rockefeller Lane, Redondo Beach, California, dated February 16, 2026

Q Email Correspondence Regarding Trustee Property Valuation Between Bryce Kawata and Chapter 7 Trustee Timothy Yoo

R Debtor's Amended Schedule A/B

CRYSTAL GLENDA ROSENLUND
1916 Rockefeller Lane, Unit 7
Redondo Beach, CA 90278
(310)697-9722
crystalrosenlund@icloud.com
In Pro Per

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CRYSTAL GLENDA ROSENLUND,<br><br>Debtor. | Case No.: 2:26-bk-11423-BR<br><br>CHAPTER 7<br><br>**INDEX OF DEBTOR'S EXHIBITS**<br>**(In Support of Debtor's Reply to Creditor Brian Rosenlund's Opposition to Debtor's Motions to Avoid Judicial Liens (Dkt. Nos. 20, 21, 22, and 23))**<br><br>Date: JULY 28, 2026<br>Time: 10:00 A.M.<br>Courtroom: 1668 (in person hearing)<br>EDWARD ROYBAL BUILDING –<br>255 E. TEMPLE STREET<br>LOS ANGELES, CA 90012<br>Judge: HONORABLE BARRY RUSSELL |

| Exhibit | Description |
|---|---|
| A | United States Bankruptcy Court, Central District of California, Case No. 2:26-bk-11875-VZ, Chapter 7 Trustee's Report of No Distribution (Bankr. Dkt. No. 17) |
| B | Los Angeles County Recorder, Grant Deed Recorded November 17, 2021, for 1916 Rockefeller Lane, Redondo Beach, California |

C Los Angeles County Superior Court,
Case No. 18STFL03527,
Minute Order Following Contempt Trial
(May 12, 2026)

D Los Angeles County Superior Court,
Case No. 18STFL03527,
Relevant Excerpts from Reporter's Transcript
of Contempt Trial (May 12, 2026)

E Los Angeles County Department of Child Support Services,
Child Support Payment History and Arrearage Statement

F Los Angeles County Superior Court,
Case No. 18STFL03527,
Respondent Crystal Rosenlund's Declaration and
Supporting Calculation of Past-Due Spousal Support
and Accrued Statutory Interest

G Contractor Proposals for Primary Bathroom Renovation
and Hardwood Flooring Work
(November 19, 2021 and January 12, 2022)

H Photographs of March 29, 2023 Washing Machine Drain
Failure and Resulting Dining Room Ceiling Damage

# EXHIBIT A

United States Bankruptcy Court, Central District of California
Case Number: 2:26-bk-11423-BR
Chapter 7 Trustee's Report of No Distribution
(Bankr. Dkt. No. 17)

# Docket Activity Report

## U.S. Bankruptcy Court -- Central District of California

**Report Period: 6/9/2026 12:00 AM - 6/10/2026 11:59 PM**

| Case | Doc Id | Date Entered/Filed | Category/ Event | Judge/ Trustee | Notes |
|---|---|---|---|---|---|
| 2:26-bk-11423-BR Crystal Glenda Rosenlund<br>*Office:* 2 *Type:* bk<br>*Chapter:* 7 *Assets:* No | 17 | *Entered:* 06/09/2026 09:03:14<br>*Filed:* 06/09/2026 | *Category:* trustee<br>*Event:* Chapter 7 Trustee's Report of No Distribution - No Funds | *Judge:* Russell<br>*Trustee:* Yoo (TR) | *Subm. by:* T. Yoo (TR)<br>*Group:* tr |

*Docket Text for above trustee:* Chapter 7 Trustee's Report of No Distribution: I, Timothy Yoo (TR), having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 4 months. Assets Abandoned (without deducting any secured claims): $ 217.08, Assets Exempt: $ 900000.00, Claims Scheduled: $ 307083.58, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 307083.58. Debtor appeared.. (Yoo (TR), Timothy)

**Docket entries selected: 1**

Selection Criteria

| | |
|---|---|
| **Run date and time** | Sat Jul 11 18:49:45 2026 |
| **Category (Doc type)** | All |
| **Case** | 2:26-bk-11423 |
| **Sort by** | Case Number |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/11/2026 18:49:46 | | | |
| **PACER Login:** | crystalrosenlund | **Client Code:** | |
| **Description:** | Docket Activity Report | **Search Criteria:** | 2:26-bk-11423-BR Cat: All From: 6/9/2026 To: 6/10/2026 Sum Text: full docket text |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# Exhibit B

Los Angeles County Recorder
Grant Deed Recorded November 17, 2021
1916 Rockefeller Lane, Redondo Beach, California

**This page is part of your document - DO NOT DISCARD**

# 20211707293

**Pages: 0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/17/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 3,712.50 |
| OTHER: | 0.00 |
| PAID: | 3,743.50 |

LEADSHEET

202111171020044

**00021530979**

012896072

**SEQ:**
**01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

330397

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

Crystal G. Rosenlund
1916 Rockefeller Lane #7
Redondo Beach, CA 90278

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

**RECORDING REQUESTED BY:**
**Fidelity National Title Company**

**AND WHEN RECORDED MAIL TO:**

Crystal G. Rosenlund
1916 Rockefeller Lane #7
Redondo Beach, CA 90278

THIS SPACE FOR RECORDER'S USE ONLY:

**Title Order No.:** 00330397
**AP#:** 4156-014-041

**Escrow No.:** 020490-DR

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

**DOCUMENTARY TRANSFER TAX is $1,237.50**
**CITY TRANSFER TAX $2,475.00**

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area [X] City of Redondo Beach **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Robert C. Krueger and Carol N. Krueger, Co-Trustees of the Krueger Living Trust dated July 7, 2003 and His/Her/Their Successor Trustee(s) in Interest**

hereby GRANT(s) to:

**Crystal G. Rosenlund, an Unmarried Woman**

the real property in the City of Redondo Beach, County of Los Angeles, State of California, described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**Also Known as:** 1916 Rockefeller Lane #7, Redondo Beach, CA 90278

**DATED: November 4, 2021**

**Signature Page attached hereto and made a part hereof**

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

**Title Order No.: 00330397** **Escrow No.: 020490-DR** **AP#: 4156-014-041**

## SIGNATURE PAGE

**Title of Document: GRANT DEED**

**Date of Document: November 4, 2021**

Robert C. Krueger and Carol N. Krueger, Co-Trustees
of the Krueger Living Trust dated July 7, 2003 and
His/Her/Their Successor Trustee(s) in interest

By: [signature]
Robert C. Krueger, Co-Trustee

By: Carol N. Krueger
Carol N. Krueger, Co-Trustee

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF VIRGINIA
COUNTY OF PRINCE WILLIAM
On NOVEMBER 8, 2021
before me, Stephanie Shawnee Curley
A Notary Public personally appeared
Robert C. Krueger and Carol N. Krueger
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of Virginia that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature [signature] (Seal)

STEPHANIE SHAWNEE CURLEY NOTARY PUBLIC REG. #7784099 MY COMMISSION EXPIRES 09/30/22 COMMONWEALTH OF VIRGINIA

Escrow No.: 020490-DR
Date: November 4, 2021

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF REDONDO BEACH, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

(A) AN UNDIVIDED 1/7TH INTEREST IN AND LOT 1 OF TRACT NO. 40053, IN THE CITY OF REDONDO BEACH, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1046 PAGES 92 AND 93 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. EXCEPT UNITS 1 TO 7 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED APRIL 9, 1985 AS INSTRUMENT NO. 85-391329, OFFICIAL RECORDS.

(B) UNIT 7 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

PARCEL 2:

AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1 ABOVE FOR ALL USES AND PURPOSES OF A BALCONY AND YARD AREA OVER AND ACROSS THAT PORTION OF LOT 1 OF SAID TRACT 40053, BEARING THE SAME UNIT NUMBER DESIGNATION AS THE ABOVE UNIT NUMBER AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

APN: 4156-014-041

# EXHIBIT C

## Los Angeles County Superior Court
## Case No. 18STFL03527
## Minute Order Following Contempt Trial (May 12, 2026)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Family Division**
**Stanley Mosk Dept. - 832**

**18STFL03527**
**Rosenlund, Brian**
**vs**
**Rosenlund, Crystal**

**May 12, 2026**
**8:30 AM**

Honorable Melissa C. Lyons, Judge

C. Kim, Judicial Assistant

Andrea Grageda (#14571), Court Reporter

---

**NATURE OF PROCEEDINGS:** OSC - Re Contempt filed by Respondent on December 18, 2025

The following parties are present for the aforementioned proceeding:

Brian Rosenlund, Petitioner
Crystal Rosenlund, Respondent

The cause is called for Trial.

The Cause resumes from

Parties are placed under oath.

Respondent resumes testifying on direct on her own behalf, is cross-examined, and excused for the noon recess.

Respondent's exhibit 1 (Judgement filed November 17, 2021) is marked for identification and admitted into evidence.

Respondent's exhibit 2 (Payment History) is marked for identification only.

Respondent's exhibit 3 (Petitioner's multiple Income and Expense Declarations) is marked for identification and admitted into evidence.

The Court takes judicial notice of Appellate Remittiturs in the case file.

The Court takes judicial notice of a series of Minute Orders.

Respondent's exhibit 6 (demonstrative outline of case) is marked for identification and admitted into evidence.

Respondent's exhibit 7 (series of schedule E documents as to the tax privilege) is marked for identification and admitted into evidence.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Family Division**

**Stanley Mosk Dept. - 832**

**18STFL03527**
**Rosenlund, Brian**
**vs**
**Rosenlund, Crystal**

**May 12, 2026**
**8:30 AM**

Respondent's exhibit 8 (Schedule of Assets and Debts from June 08, 2018) is marked for identification and admitted into evidence.

Respondent's exhibit 9 (Respondent's FL-396 -Request for Production of an Income and Expense Declaration After Judgment- dated February 10, 2026) is marked for identification and admitted into evidence.

Respondent's exhibit 10 (list of businesses associated with Petitioner) is marked for identification only.

Respondent's exhibit 11 (fictious business names statement for Petitioner) is marked for identification and admitted into evidence.

Respondent's exhibit 12 (photo taken by Respondent of a construction sign showing Petitioner as builder) is marked for identification and admitted into evidence.

Respondent's exhibit 13 (photograph taken by Respondent depicting Petitioner present at the construction site) is marked for identification and admitted into evidence.

Respondent's exhibit 14 (Minor child's extracurricular activity costs) is marked for identification and admitted into evidence.

Petitioner's exhibit D (monthly billing statement from Department of Children Support Services) is marked for identification only.

Petitioner's exhibit A (Respondent's December 30, 2024 Contempt filing) is marked for identification

Petitioner's exhibit B (Notice of Employee Discharge) is marked for identification only.

The Court takes the noon recess.

The Cause is re-called for hearing.

Parties are reminded they remain under oath.

Respondent resumes testifying on cross-examination, testifies on re-direct, and excused.

Parties rest.

Respondent and Petitioner give the closing argument.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Family Division**
**Stanley Mosk Dept. - 832**

**18STFL03527**
**Rosenlund, Brian**
**vs**
**Rosenlund, Crystal**

**May 12, 2026**
**8:30 AM**

The Court finds Respondent's testimony is credible and the Citee/Petitioner has not followed the court's order as to payments of child support, therefore, finds the Citee/Petitioner guilty of the 20 counts of contempt.

Petitioner is ordered to pay to Respondent as and for child support arrears in the sum of $125,954.29.

Petitioner is notified that if the child support arrears are paid by the continued hearing date, the matter shall be discharged.

Time waived for sentencing.

Petitioner waives and gives up his right to be sentenced by the same judicial officer and agrees that any judicial officer may sentence Petitioner at the continued hearing date.

All exhibits are returned to counsel this date for safekeeping pending expiration of any appeal period.

The Order to Show Cause re: Contempt is continued to December 8, 2026, at 8:32 AM in Stanley Mosk Dept. - 832.

The Citee is ordered to return on the aforementioned date and time in this department without further notice, order or subpoena.

The Court's minute order shall serve as the Order After Hearing. No formal order is necessary.

It is so ordered.

Dated: **5/12/2026**

**MELISSA C. LYONS**
Judge of the Superior Court

# EXHIBIT D

## SELECTED EXCERPTS FROM CERTIFIED REPORTER'S TRANSCRIPT

**Superior Court of California**

**County of Los Angeles**

**Case No. 18STFL03527**

**Brian Rosenlund,** Petitioner

v.

**Crystal Rosenlund,** Respondent

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

**May 12, 2026**

Hon. Melissa C. Lyons, Judge

Certified Reporter: Andrea Grageda, CSR No. 14571

## NOTICE REGARDING EXHIBIT

This exhibit contains **selected excerpts** from the certified Reporter's Transcript of Proceedings for the May 12, 2026 contempt hearing.

Only those portions relevant to the factual assertions raised in Creditor Brian Rosenlund's Opposition to Debtor's Motions to Avoid Judicial Liens are included. The excerpts are presented for the Court's convenience. The transcript is an official certified transcript, and the complete transcript remains available if requested.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

-o0o-

DEPARTMENT 832 HON. MELISSA C. LYONS, JUDGE

BRIAN ROSENLUND, )
PETITIONER, )
VS. ) NO. 18STFL03527
CRYSTAL ROSENLUND, )
RESPONDENT. )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MAY 12, 2026

CERTIFIED TRANSCRIPT

APPEARANCES:

FOR THE PETITIONER: BRIAN ROSENLUND
IN PROPRIA PERSONA

FOR THE RESPONDENT: CRYSTAL ROSENLUND
IN PROPRIA PERSONA

VOLUME 1 OF 1
PAGES 1-78 INCL.

ANDREA GRAGEDA CSR NO. 14571
OFFICIAL REPORTER

# M A S T E R   I N D E X

## VOLUME 1

## SESSIONS


| | PAGE |
|---|---|
| TUESDAY, MAY 12, 2026 | |
| A.M. SESSION | 5 |
| P.M. SESSION | 57 |

# M A S T E R   I N D E X

## VOLUME

## CHRONOLOGICAL INDEX OF WITNESSES

EXAMINATION



| | PAGE |
|---|---|
| ROSENLUND, CRYSTAL, (CALLED BY PETITIONER)<br>CROSS-EXAMINATION BY MR. ROSENLUND | 40 |

# MASTER INDEX

## VOLUME I

## EXHIBITS

| PETITIONER'S EXHIBITS: | DESCRIPTION | ID | EVD | REFUSED |
|---|---|---|---|---|
| 1 | COURT ORDER | | 8 | |
| 2 | PAYMENT RECORD | | | 14 |
| 3 | FL 150 | | 19 | |
| 4 | REMITTITUR | | 21 | |
| 5 | MINUTE ORDERS | | 22 | |
| 6 | TIMELINE | | 25 | |
| 7 | SCHEDULE E | | 27 | |
| 8 | ASSETS/DEBTS | | 29 | |
| 9 | FL 396 | | 30 | |
| 10 | LEXUS NEXUS RECORD | | | 32 |
| 11 | PHOTO | | 33 | |
| 12 | PHOTO | | 35 | |
| 13 | PHOTO | 35 | | |
| 14 | SAND $ SURF INVOICE | | 37 | |
| 15 | ARREARS | 64 | | |

CASE NUMBER: 18STFL03527

YOU OVERPAID.

Q BY MR. ROSENLUND: DO YOU BELIEVE THAT ONCE MODIFICATION IS DECIDED, THE TOTAL AMOUNT OF ARREARS YOU CLAIMED COULD BE REDUCED TO ZERO?

A I DO NOT.

Q I WOULD LIKE TO REFER TO EXHIBIT H. I THINK IT IS EXHIBIT 8, FORMERLY KNOWN AS EXHIBIT 8. I DIRECT THE COURT'S ATTENTION TO PAGE 60 OF THIS EXHIBIT.

THE RESPONDENT: OBJECTION, YOUR HONOR. RELEVANCE. OBJECTION UNDER EVIDENCE CODE 352. OBJECTION. LACK OF FOUNDATION.

THE COURT: WELL, HE HASN'T ASKED THE QUESTION YET. HE'S ONLY DIRECTED YOU TO THE DOCUMENT. ALL RIGHT. WHAT'S THE QUESTION?

Q BY MR. ROSENLUND: OKAY. AGAIN, I'M REFERRING TO PAGE 60 OF 138. CAN YOU READ TO ME WHAT THE BALANCE PAST DUE IN THE SUPPORT LINE READS?

A I DON'T HAVE THAT DOCUMENT IN FRONT OF ME. I COULDN'T PRINT UP THAT DOCUMENT. I'M NOT AWARE OF WHAT THAT DOCUMENT IS.

(PETITIONER HANDED DOCUMENT OVER TO RESPONDENT.)

THE RESPONDENT: OBJECTION, YOUR HONOR. RELEVANCE. EVIDENCE CODE SECTION 350. UNDUE PREJUDICE. CONFUSION. EVIDENCE CODE 352. IMPROPER CHARACTER EVIDENCE. EVIDENCE CODE SECTION 1101. IMPROPER COLLATERAL IMPEACHMENT.

THE COURT: OVERRULED. YOU CAN ANSWER THE

QUESTION.

THE RESPONDENT: I DON'T KNOW.

Q BY MR. ROSENLUND: CAN YOU READ THE AMOUNT THAT YOU PUT DOWN FOR SUPPORT PAST DUE ON PAGE 60 OF THIS DOCUMENT?

A I PUT -- WHERE IN NUMBER 29?

Q NUMBER 29.

A I PUT PAST DUE CHILD SUPPORT IS OWED TO DEBTOR --

THE PETITIONER: OBJECTION, YOUR HONOR. NONRESPONSIVE. MOTION TO STRIKE.

THE RESPONDENT: I'M UNCERTAIN WHAT HE'S ASKING.

THE COURT: HE'S ASKING YOU WHAT WAS THE NUMBER THAT YOU PUT THERE, MA'AM.

THE RESPONDENT: WHERE?

Q BY MR. ROSENLUND: ON THE LINE THAT SAYS, "SUPPORT."

A I PUT ZERO. I THINK THAT'S WHAT I WAS INSTRUCTED TO DO SINCE I'M -- I DON'T KNOW. I HAD TO FILE THIS BY MYSELF AND DID MY BEST.

THE RESPONDENT: STILL OBJECT TO BANKRUPTCY MATERIALS BEING PUT BEFORE THIS COURT. IT DOES NOT DETERMINE WHETHER HE CAN OBEY THE CHILD SUPPORT ORDER, DOESN'T EXCUSE HIS ARREARS, AND IT DOESN'T ESTABLISH HIS INABILITY.

THE COURT: THOSE ARE NOT LEGAL OBJECTIONS, MA'AM.

THE PETITIONER: OBJECTION. ARGUMENTATIVE.

THE RESPONDENT: OBJECTION. RELEVANCE.

THE COURT: OKAY. STOP. NEXT QUESTION.

Q BY MR. ROSENLUND: WHY WOULD YOU SWEAR UNDER PENALTY OF PERJURY IN A FEDERAL FILING IF IT WERE NOT TRUE?

A I'M HUMAN. I OBVIOUSLY MADE A MISTAKE ON THAT. I DIDN'T REALIZE THAT I DID THAT. THAT'S -- THIS IS A VERY COMPLEX THING JUST LIKE THE REST OF THIS, AND I DIDN'T REALIZE THAT.

Q ON THE SAME BANKRUPTCY SCHEDULES WHERE YOU SET CHILD SUPPORT ARREARS YOU WROTE AT ZERO, YOU ALSO LISTED DEBT OF APPROXIMATELY $46,000 THAT YOU OWED TO ME AND ASKED THE BANKRUPTCY COURT TO DISCHARGE THAT DEBT; CORRECT?

THE RESPONDENT: OBJECTION. RELEVANCE.

THE COURT: WHAT'S THE RELEVANCE?

THE PETITIONER: THE RELEVANCE IS WHETHER OR NOT SHE ASKED THAT THAT DEBT BE DISCHARGED.

THE COURT: WHY IS THAT RELEVANT AS TO WHETHER OR NOT YOU HAVE PAID CHILD SUPPORT OR ARE ABLE TO PAY CHILD SUPPORT?

THE PETITIONER: YOUR HONOR, THOSE FUNDS COULD BE USED TO PAY CHILD SUPPORT.

THE COURT: THE FACT THAT SHE ALLEGEDLY OWED YOU MONEY?

THE PETITIONER: YES, YOUR HONOR.

THE COURT: NO. CHILD SUPPORT IS WHAT YOU PAY

BASED ON THE ORDERS OF THE COURT NOT IF SHE OWES YOU MONEY. THEY ARE SEPARATE AND APART. YOU DON'T OFFSET CHILD SUPPORT. NEXT QUESTION.

Q BY MR. ROSENLUND: YOU STARTED RECEIVING CHILD SUPPORT FROM ME IN 2018 WHEN WE SEPARATED; CORRECT?

A I'M NOT SURE IF IT WAS A ADJUDICATED AS CHILD SUPPORT AT THE TIME OF SEPARATION.

Q YOU RECEIVED CHILD SUPPORT FROM ME THROUGHOUT 2018, 2019 --

THE COURT: WHY IS IT RELEVANT WHETHER SHE GOT CHILD SUPPORT FROM YOU PRIOR TO 2022 WHEN SHE SAID YOU DIDN'T PAY? WHY IS THAT RELEVANT?

Q BY MR. ROSENLUND: IN THE CONTEMPT MOTION THAT YOU FILED IN 2024, THIS COURT DENIED THE CONTEMPT ON THE GROUND OF LACK OF JURISDICTION BECAUSE DCSS HAD NOT BEEN SERVED FL 645 NOTICE. DO YOU HAVE EVIDENCE IT WAS FILED AND SERVED ON DCSS?

A WHEN? FOR 2024 OR FOR CURRENT 'CAUSE THAT WAS --

THE RESPONDENT: OBJECTION. COMPOUND.

THE PETITIONER: THIS WAS FOR A --

THE COURT: COURT'S GOING TO SUSTAIN ITS OWN OBJECTION. IT'S NOT RELEVANT.

THE RESPONDENT: AND I DO HAVE THOSE DOCUMENTS IF YOU NEED THEM, YOUR HONOR.

THE COURT: BUT IT'S NOT RELEVANT AT THIS POINT WE STARTED. NEXT QUESTION.

THE PETITIONER: NO MORE QUESTIONS, YOUR

MA'AM.

THE RESPONDENT: OH, I'M SORRY. UNDER CALIFORNIA FAMILY CODE SECTION 4000 IT DISCUSSES ENFORCEMENT OF CHILD SUPPORT ORDERS AND WOULD UNDERSCORE THE IMPORTANCE OF SHOWING PAYMENT HISTORY. PAYMENT HISTORY STRONGLY SUPPORTS MY CLAIMS OF PARTIAL AND NON-PAYMENT.

YOUR HONOR, I WOULD LIKE TO SUBMIT THE PAYMENT HISTORY DIRECTLY FROM THEM. I PERSONALLY RECEIVED THIS FROM NELLY KERAPACHYAN (PHONETIC SPELLING)DOWNSTAIRS, TWO FLOORS DOWN FROM HERE RIGHT NOW. IT IS AN AUTHENTIC DOCUMENT.

I WASN'T AWARE THAT THE CUSTOMER CONNECT PORTAL WAS NOT ABLE TO BE SUBMITTED INTO EVIDENCE. THIS IS A PUBLIC RECORD, AND UNDER THE EXCEPTION FOR A PUBLIC RECORD, IT'S RELEVANT. IT'S CRITICAL, AND EXCEPTIONS UNDER EVIDENCE CODE 1270 AND AUTHENTICATION EVIDENCE CODE 1401, PLEASE.

THE COURT: THE OBJECTION IS SUSTAINED. YOU'RE NOT THE PERSON THAT CREATES THE DOCUMENTS, AND IT'S NOT A CERTIFYING COPY OF THE DOCUMENTS, SO THAT OBJECTION IS SUSTAINED. ANYTHING ELSE, MA'AM?

THE RESPONDENT: NO, YOUR HONOR.

THE COURT: ANY ADDITIONAL QUESTIONS OF HER, SIR?

THE PETITIONER: NO, YOUR HONOR.

THE COURT: COURT HAS SOME QUESTIONS. MA'AM, THE DATES THAT YOU LISTED AS YOUR COUNTS, DID YOU

RECEIVE FUNDS IN THE FULL AMOUNT OF $7,117 AS ORDERED FROM MR. ROSENLUND AS PAYMENT FOR CHILD SUPPORT.

THE RESPONDENT: ON THE DATES THAT I LISTED?

THE COURT: CORRECT.

THE RESPONDENT: NO, I DID NOT. I WANT TO CLARIFY, THE DATES ON MY FL 411 --

THE COURT: CORRECT. FOR EACH COUNT.

THE RESPONDENT: NO, I DID NOT.

THE COURT: HOW DO YOU USUALLY RECEIVE CHILD SUPPORT, MA'AM?

THE RESPONDENT: I RECEIVE IT FROM THE UM -- I'M SORRY, DIRECT DEPOSIT FROM DEPARTMENT OF CHILD SUPPORT SERVICES.

THE COURT: ON EXHIBIT H IN HIS, MR. ROSENLUND'S PAGE 60, THERE'S WRITING IN A BOX. DID YOU WRITE THAT?

THE RESPONDENT: YES, I DID.

THE COURT: EXPLAIN. WHY DID YOU PUT ZERO.

THE RESPONDENT: YOUR HONOR, I PUT PAST DUE CHILD SUPPORT IS OWED TO ME, BUT COLLECTION'S UNCERTAIN BECAUSE I HAVE BEEN GETTING SEVERAL NON PAYMENTS, PARTIAL PAYMENTS, AND LACK OF ENFORCEMENT ABILITY ON RECEIVING CHILD SUPPORT. I'VE BEEN TRYING THROUGH DCSS. IT'S BEEN A LENGTHY PROCESS.

THE COURT: ALL RIGHT. ANYTHING ELSE?

THE PETITIONER: MAY I SAY SOMETHING?

THE COURT: MA'AM, ANYTHING ELSE?

THE RESPONDENT: I'M NOT SURE. I THOUGHT YOU

HAD QUESTIONS OF ME.

THE COURT: THAT WAS THE END OF MY QUESTIONS. ARE YOU COMPLETE?

THE RESPONDENT: I THINK SO.

THE COURT: ALL RIGHT. ANY ADDITIONAL QUESTIONS BASED ON THOSE QUESTIONS FROM THE COURT, SIR?

THE PETITIONER: YES. I HAVE A QUESTION.

Q BY MR. ROSENLUND: YES. IN THE BANKRUPTCY FILING YOU REFERENCED, DID YOU SEEK PERMISSION FROM THE TRUSTEE TO PURSUE ANY ARREARS ON CHILD SUPPORT?

A I DIDN'T KNOW THAT WAS AN OPTION. HE HASN'T DISCUSSED THAT WITH ME. I'M STILL IN THE PROCESS WITH THE TRUSTEE. I'M NOT SAVVY IN THIS REGARD AT ALL.

THE PETITIONER: EVERY COUNT IN THIS CONTEMPT ARISES FROM PREPETITION MONTHS AND, THEREFORE, BELONGS TO ESTATE AND NOT TO RESPONDENT PERSONALLY.

THE COURT: THIS ISN'T BANKRUPTCY COURT, AND THERE'S NOT A TRUSTEE HERE TO MAKE THAT CLAIM. ANYTHING ELSE?

THE PETITIONER: SHE NEEDS TO SEEK PERMISSION FROM THE TRUSTEE TO PURSUE THIS CLAIM UNDER U.S. BANKRUPTCY LAW.

THE COURT: OKAY. WELL, IF THERE'S AN ISSUE, THE TRUSTEE CAN MAKE THAT CLAIM. ALL RIGHT. ANYTHING ELSE? ANY OTHER QUESTIONS?

THE RESPONDENT: THE TRUSTEES --

THE COURT: NOT YOU. IT'S HIS TURN.

THE PETITIONER: NO, YOUR HONOR.

THE COURT: ALL RIGHT. ANYTHING ELSE, MA'AM?

THE RESPONDENT: THE TRUSTEE IS AWARE OF THE CIRCUMSTANCES. HE HASN'T QUESTIONED ME ON ANYTHING IN REGARDS TO CHILD SUPPORT AT THIS TIME.

THE COURT: OKAY. ANYTHING ELSE?

THE RESPONDENT: NO, YOUR HONOR, THANK YOU.

THE COURT: TYPICALLY CHILD SUPPORT IS NOT SOMETHING A TRUSTEE CAN USE TO PAY ANY ASPECT OF HER DEBT. IT BELONGS TO THE CHILDREN, NOT HER.

ALL RIGHT. COMPLETE PRESENTING YOUR CASE, MA'AM, IN TERMS OF EVIDENCE. CLOSING ARGUMENT.

THE RESPONDENT: YES, YOUR HONOR.

THE COURT: WAIT. SORRY. COMPLETE PRESENTING YOUR CASE, MR. ROSENLUND? IS THERE ANY ADDITIONAL INFORMATION YOU'D LIKE TO PROVIDE TO THE COURT? SORRY.

THE PETITIONER: YES, YOUR HONOR. THAT I JUST WANT TO REITERATE THERE IS NO FL --

THE COURT: SO NOT CLOSING ARGUMENT. IS THERE ANY ADDITIONAL EVIDENCE YOU WANT TO PRESENT.

THE PETITIONER: NO, YOUR HONOR.

THE COURT: OKAY. GO AHEAD THEN WITH YOUR CLOSING ARGUMENT, MA'AM.

THE RESPONDENT: OKAY. YOUR HONOR, FAMILY CODE SECTION 298 AUTHORIZES ENFORCEMENT OF THIS CHILD SUPPORT ORDER BY CONTEMPT. CODE OF CIVIL PROCEDURE 1218.5 PERMITS EACH MONTH OF UNPAID SUPPORT TO BE ALLEGED IN A SEPARATE COUNT.

UNDER MOSS V. SUPERIOR COURT AND IN RE: IVY/

INABILITY TO PAY IS AN AFFIRMATIVE DEFENSE IN CHILD SUPPORT. IT'S NOT AN ELEMENT THAT I MUST PROVE. THE EVIDENCE ESTABLISHES A VALID ORDER, RESPONDENT'S KNOWLEDGE, AND NON-PAYMENT FOR EACH CHARGED ACCOUNT.

RESPONDENT HAS NOT MET HIS BURDEN TO ESTABLISH INABILITY, AND DOCUMENTARY EVIDENCE SHOWS FINANCIAL ACTIVITY INCONSISTENT WITH ABILITY.

IN CODE OF CIVIL PROCEDURE 1209, THIS IS WILLFUL DISOBEDIENCE OF A LAWFUL COURT ORDER AND CONTEMPT. MR. ROSENLUND HAS ACCESS TO ASSETS, PAID OTHER OBLIGATIONS, AND CHOSE NOT TO PAY COURT-ORDERED CHILD SUPPORT.

THERE'S SUBSTANTIAL ARREARS IN THIS CASE, YOUR HONOR, AND OUR CHILDREN ARE SUFFERING AS A RESULT. I WOULD REQUEST THE COURT CHARGE MR. ROSENLUND WITH CONTEMPT.

THE COURT: ALL RIGHT. THANK YOU.

THE RESPONDENT: THANK YOU.

THE COURT: CLOSING ARGUMENT, MR. ROSENLUND.

THE PETITIONER: YES, YOUR HONOR. I MOVE TO DISMISS ALL COUNTS OF CONTEMPT, AND THE GROUNDS FALL INTO THREE CLUSTERS. CLUSTER ONE, LACK OF JURISDICTION, THERE IS NO FL 645 SERVED THROUGH DCSS. RESPONDENT FILED CHAPTER 7 BANKRUPTCY.

ALL PREPETITION CLAIMS OF THE DEBTOR BECAME PROPERTY OF THE BANKRUPTCY ESTATE AT THE MOMENT OF FILING. THE BANKRUPTCY PRECLUDES RESPONDENT FROM PURSUING CLAIMS THAT BELONG TO THE ESTATE IN HER OWN

NAME.

ONLY THE CHAPTER 7 TRUSTEE HAS STANDING TO DO SO. EVERY COUNT IN THIS CONTEMPT ARISES FROM PREPETITION MONTHS AND, THEREFORE, BELONGS TO THE ESTATE NOT TO RESPONDENT PERSONALLY.

UNDER THESE JURISDICTIONAL -- UNTIL THESE JURISDICTIONAL THRESHOLDS ARE RESOLVED, THIS COURT SHOULD NOT ADJUDICATE THE COUNTS. CLUSTER TWO, LACK OF EVIDENCE. RESPONDENT PRODUCED NO CERTIFIED DCSS OR SDU PAYMENT RECORDS FOR ANY OF THE MONTHS SHE CHARGES. HER FL 411 AMOUNTS ARE UNAUTHENTICATED AND UNSUPPORTED BY ANY ADMISSIBLE PAYMENT RECORD.

CLUSTER THREE, RESPONDENT HAS NOT PROVEN A SINGLE MONTH OF NON-PAYMENT. SHE DECLARED THAT THE ARREARS ARE ZERO. RESPONDENT FILED THIS CONTEMPT STRATEGICALLY EIGHT DAYS AFTER THE COURT SET THE MODIFICATION FOR A FINAL IN-PERSON HEARING TO DERAIL THAT MODIFICATION. THAT'S ALL I HAVE, YOUR HONOR.

THE COURT: ALL RIGHT. THANK YOU. THE COURT HAS CONTEMPLATED THE CREDIBILITY OF A WITNESS AND HAS FOUND MS. ROSENLUND TO BE CREDIBLE.

WITH RESPECT TO THE SPECIFIC INFORMATION PROVIDED TO THE COURT IN THE FORM OF ADMISSIBLE EVIDENCE, SHE TESTIFIED THAT SHE HAS NOT RECEIVED FULL PAYMENT FROM MR. ROSENLUND IN THE AMOUNT AS ORDERED BY THE COURT IN THESE COUNTS THAT SHE ARTICULATED.

SHE SHOWED THAT MR. ROSENLUND DID, IN FACT, HAVE NOTICE OF THE ORDER BOTH EVIDENCED BY THE ORDER

ITSELF, THE REMITTITUR SHOWING THAT HE FILED AN APPEAL AND HIS APPEAL -- WHEN THE COURT DENIED HIS REQUEST FOR MODIFICATION, HIS APPEAL WAS DENIED, WHICH MEANS THE ORDER WAS UPHELD.

THERE HAS BEEN NO EVIDENCE PRESENTED BEFORE THE COURT TO INDICATE THAT THE ORDER HAS BEEN CHANGED. THERE'S SUFFICIENT PROOF THAT THERE WAS A VALID ORDER FOR HIM TO PAY $7,117 PER MONTH IN THE AMOUNT OF CHILD SUPPORT, THAT THAT AMOUNT WAS NOT PAID EACH MONTH IN EACH COUNT.

AS FAR AS ABILITY TO PAY -- INABILITY TO PAY -- AS MS. ROSENLUND INDICATED, IT IS NOT HER BURDEN TO PROVE WHETHER OR NOT HE HAS THE ABILITY TO PAY. THAT IS MR. ROSENLUND'S BURDEN TO SHOW AN INABILITY TO PAY.

SHE HAS MADE HER PRIMA FACIE CASE THAT THERE WAS A VALID COURT ORDER, THAT HE DID NOT FOLLOW THE COURT ORDER; HOWEVER, SHE DID PROVIDE INFORMATION TO THE COURT THAT SHOWS HE DID AND DOES HAVE THE ABILITY TO PAY.

SPECIFICALLY, THE COURT IS REFERENCING THE I & Es PROVIDED THAT ARE MR. ROSENLUND'S INCOME AND EXPENSE DECLARATION SHOWING THAT FOR THE PERIOD OF TIME PENDING THE ORDERS FOR CHILD SUPPORT, HE HAD $3.5 MILLION DOLLARS IN ASSETS.

THOSE ASSETS ARE AVAILABLE FOR SUPPORT; THUS THE COURT FINDS HE HAD AN ABILITY TO PAY. AGAIN, EVEN THOUGH THAT IS AN AFFIRMATIVE DEFENSE AND WAS NOT

PRESENTED BY MR. ROSENLUND, THE COURT DOES FIND THAT THE INFORMATION PRESENTED BY MS. ROSENLUND TENDS TO SHOW THAT HE DID, IN FACT, AND DOES, IN FACT, HAVE THE ABILITY TO PAY THE $7,117 PER MONTH.

AS TO THE ZERO DOLLARS ON THE BANKRUPTCY FILED, ONE, IT WASN'T ADMITTED, BUT EVEN IF THE COURT WERE TO CONSIDER THAT INFORMATION, COURT WILL ALSO NOTE THAT IN THE BOX RIGHT NEXT TO THAT THERE IS AN EXPLANATION AS TO WHY THAT NUMBER IS THERE. IT HAS TO DO WITH THE ABILITY TO PERSONALLY COLLECT. AND THE COURT FINDS CREDIBLE MS. ROSENLUND'S EXPLANATION AS TO WHY SHE PUT A ZERO AMOUNT IN THAT BASED ON HER INABILITY TO PERSONALLY COLLECT THE FUNDS GIVEN HER PRIOR EFFORTS TO COLLECT THE FUNDS.

SO AS I STATED PREVIOUSLY, SHE HAS MADE A PRIMA FACIE SHOWING THAT A LAWFUL ORDER WAS MADE, AND HE HAD KNOWLEDGE OF THE ORDER AND HAS NOT FOLLOWED THE ORDER.

SO THE COURT FINDS THERE HAS BEEN PROOF BEYOND A REASONABLE DOUBT THAT THE CITEE, MR. ROSENLUND, HAS NOT FOLLOWED THE COURT'S ORDERS AS IT RELATES TO PAYMENT OF CHILD SUPPORT AND, THEREFORE, FINDS HIM GUILTY AS TO EACH COUNT OF CONTEMPT.

NOTWITHSTANDING THE ARGUMENTS AS IT RELATES TO RETROACTIVITY, THE FACT THAT RETROACTIVITY IS RESERVED IN THE DEPARTMENT 33, ALSO KNOWN AS DEPARTMENT 409 DOES NOT CHANGE THAT THE CITEE, MR. ROSENLUND, HAS NOT FOLLOWED THE COURT ORDERS.

# Exhibit E

## Los Angeles County Department of Child Support Services
## Child Support Payment History and Arrearage Statement

California Child Support
**Customer CONNECT**

## Appointments

FRI
16
Oct

**Case Number:** 200000002562053
**Date:** 10/16/2026
**Time:** 08:30 AM - 09:00 AM
**Appointment Type:** SUPERIOR COURT HEARING

## SELECT CASE TO VIEW DETAILS:

### Case Number:200000002562053

Other Party:BRIAN ROSENLUND

## CASE DETAILS

### Case Information

| | |
|---|---|
| **Case Number:** | 200000002562053 |
| **County:** | LOS ANGELES |
| **Role:** | PERSON RECEIVING SUPPORT |
| **Status:** | OPEN |
| **Opened Date:** | 12/07/2022 |
| **Monthly Support:** | $ 7,117.00 |
| **Past Due Support Installment:** | 0 |
| **Past Due Support:** | $ 154,535.48 |
| **Total Amount Owed:** | $ 161,652.48 |

If you have any questions about these amounts, please Contact Us.

### Support Orders

| File Date | County | Court Case Number |
|---|---|---|
| 11/17/2021 | LOS ANGELES | 18STFL03527 |
| 09/27/2023 | LOS ANGELES | 18STFL03527 |
| 05/14/2025 | LOS ANGELES | 18STFL03527 |
| 08/12/2025 | LOS ANGELES | 18STFL03527 |
| 10/22/2025 | LOS ANGELES | 18STFL03527 |
| 01/26/2026 | LOS ANGELES | 18STFL03527 |

< 1 2 >

## Case Status History

| Status | Date |
| --- | --- |
| OPEN | 12/07/2022 |

## Legal Activities

No legal activities found

California Child Support
Customer CONNECT

ROSENLUND, CRYSTAL - Participant Number: 1150000048100

## Payments I Received

2026

| Issue Date | Amount | Payment Method | Paid Date | Status |
|---|---|---|---|---|
| 06/12/2026 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 05/04/2026 | $500.00 | DIRECT DEPOSIT | | ISSUED |
| 04/03/2026 | $500.00 | DIRECT DEPOSIT | | ISSUED |
| 03/03/2026 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 02/03/2026 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 01/05/2026 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |

We have made every effort to ensure the information displayed on this page is accurate. However, in the event that the information differs from yo
please call (866) 901-3212.

*Payments made prior to May 2006 may not appear on this list.*

California Child Support
**Customer CONNECT**

## ROSENLUND, CRYSTAL - Participant Number: 1150000048100

### Payments I Received

2025

| Issue Date | Amount | Payment Method | Paid Date | Status |
|---|---|---|---|---|
| 11/04/2025 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 10/02/2025 | $1,965.00 | DIRECT DEPOSIT | | ISSUED |
| 09/03/2025 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 08/04/2025 | $200.00 | DIRECT DEPOSIT | | ISSUED |
| 07/02/2025 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 06/04/2025 | $1,000.00 | DIRECT DEPOSIT | | ISSUED |
| 05/02/2025 | $500.00 | DIRECT DEPOSIT | | ISSUED |
| 04/02/2025 | $300.00 | DIRECT DEPOSIT | | ISSUED |
| 03/05/2025 | $200.00 | DIRECT DEPOSIT | | ISSUED |
| 02/04/2025 | $500.00 | DIRECT DEPOSIT | | ISSUED |

We have made every effort to ensure the information displayed on this page is accurate. However, in the event that the information differs from yo [illegible]

*[illegible] may not appear on this list.*

California Child Support
Customer CONNECT

ROSENLUND, CRYSTAL - Participant Number: 1150000048100

## Payments I Received

2024

| Issue Date | Amount | Payment Method | Paid Date | Status |
|---|---|---|---|---|
| 12/31/2024 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 12/04/2024 | $500.00 | DIRECT DEPOSIT | | ISSUED |
| 11/05/2024 | $1,998.00 | DIRECT DEPOSIT | | ISSUED |
| 10/16/2024 | $374.71 | DIRECT DEPOSIT | | ISSUED |
| 10/02/2024 | $1,965.00 | DIRECT DEPOSIT | | ISSUED |
| 09/04/2024 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 07/31/2024 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 07/03/2024 | $2,000.00 | DIRECT DEPOSIT | | ISSUED |
| 06/04/2024 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 05/02/2024 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 04/03/2024 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 03/04/2024 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 02/01/2024 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 01/04/2024 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |

We have made every effort to ensure the information displayed on this page is accurate. However, in the event that the information differs from yo
please call (866) 901-3212.

*Payments made prior to May 2006 may not appear on this list*

California Child Support
Customer CONNECT

ROSENLUND, CRYSTAL - Participant Number: 1150000048100

Payments I Received

2023

| Issue Date | Amount | Payment Method | Paid Date | Status |
|---|---|---|---|---|
| 12/04/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 11/01/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 10/03/2023 | $7,082.00 | DIRECT DEPOSIT | | ISSUED |
| 09/05/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 07/31/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 06/29/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 06/01/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 05/02/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 03/24/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |
| 02/23/2023 | $7,117.00 | DIRECT DEPOSIT | | ISSUED |

We have made every effort to ensure the information displayed on this page is accurate. However, in the event that the information differs from yo
please call (866) 901-3212.

*Payments made prior to May 2006 may not appear on this list.*

# Exhibit F

Los Angeles County Superior Court
Case No. 18STFL03527
Respondent Crystal Rosenlund's Declaration and Supporting
Calculation of Past-Due Spousal Support and Accrued Statutory
Interest

FL-300

PARTY WITHOUT ATTORNEY OR ATTORNEY STATE BAR NUMBER

NAME: CRYSTAL ROSENLUND
FIRM NAME: IN PRO PER
STREET ADDRESS: 1916 ROCKEFELLER LANE, UNIT 7
CITY: REDONDO BEACH STATE: CA ZIP CODE: 90278
TELEPHONE NO.: (310)697-9722 FAX NO.:
EMAIL ADDRESS: crystalrosenlund@icloud.com
ATTORNEY FOR (name): In Pro Per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: 111 NORTH HILL STREET
CITY AND ZIP CODE: LOS ANGELES 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

FOR COURT USE ONLY

Electronically FILED by Superior Court of California, County of Los Angeles 6/3/2026 8:00 AM David W. Slayton, Executive Officer/Clerk of Court, By J. Esplana, Deputy Clerk

<<Department. ST832>>. Hearing Information: 8/13/2026 8:30 AM

PETITIONER: BRIAN ROSENLUND
RESPONDENT: CRYSTAL ROSENLUND
OTHER PARENT/PARTY:

REQUEST FOR ORDER [ ] CHANGE [ ] TEMPORARY EMERGENCY ORDERS

CASE NUMBER: 18STFL03527

[ ] Child Custody [ ] Visitation (Parenting Time) [X] Spousal or Partner Support
[ ] Child Support [ ] Property Control [ ] Attorney's Fees and Costs
[ ] Other (specify): Determination and enforcement of spousal support arrears

Read form FL-300-INFO for information about how to complete this form. To ask to change or end an order ... granted in a Restraining Order After Hearing (form DV-130 or JV-255), read form FL-300-INFO and form ...

1. TO (name): BRIAN ROSENLUND
[ ] Petitioner [ ] Respondent [ ] Other Parent/Party [ ] Other (specify):

2. A COURT HEARING WILL BE HELD AS FOLLOWS:

a. Date: Time: [ ] Dept.: [ ] Room.:
b. ... [ ] same as noted above [ ] other (specify):

3. WARNING to the person served: ...
not file a Responsive Declaration to Request for Order ...
before the hearing ...
more information.

COURT ORDER
(FOR COURT USE ONLY)

It is ordered that:

4. [ ] Time [ ] for service [ ] until the hearing is shortened. Service must be on or before (date):
5. ... Request for Order (form FL-320) must be served on or before (date):
6. ... recommending counseling as follows:

7. [ ] The orders in Temporary Emergency (Ex Parte) Orders (form FL-305) ...

8. [ ] Other (specify):

Date:

JUDICIAL OFFICER



Form Adopted for Mandatory Use
Judicial Council of California
FL-300 [Rev. ...]

REQUEST FOR ORDER

Family Code, §§ 2045, 2107, 6224, 6320, 6320–6326, 6380–6383
Government Code, § 70612
Cal. Rules of Court, rule 5.92
courts.ca.gov

**FL-300**

| PETITIONER: BRIAN ROSENLUND<br>RESPONDENT: CRYSTAL ROSENLUND<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>18STFL03527 |
|---|---|

## REQUEST FOR ORDER

**Note: Place a mark X in front of the box that applies to your case or to your request. If you need more space, mark the box for "Attachment." For example, mark "Attachment 2a" to indicate that the list of children's names and birth dates continues on a paper attached to this form. Then, on a sheet of paper, list each attachment number followed by your request. At the top of the paper, write your name, case number, and "FL-300" as a title. (You may use Attached Declaration (form MC-031) for this purpose.)**

1. ☐ RESTRAINING ORDER INFORMATION
One or more domestic violence restraining/protective orders are now in effect between *(specify)*:
☐ Petitioner ☐ Respondent ☐ Other Parent/Party *(Attach a copy of the orders if you have one.)*
The orders are from the following court or courts *(specify county and state)*:
a. ☐ Criminal: County/state *(specify)*: Case No. *(if known)*:
b. ☐ Family: County/state *(specify)*: Case No. *(if known)*:
c. ☐ Juvenile: County/state *(specify)*: Case No. *(if known)*:
d. ☐ Other: County/state *(specify)*: Case No. *(if known)*:

2. ☐ CHILD CUSTODY
☐ VISITATION (PARENTING TIME) ☐ I request temporary emergency orders
a. I request that the court make orders about the following children *(specify)*:
Child's Name Date of Birth ☐ Legal Custody [illegible] ☐ [illegible]

☐ Attachment 2a
b. (1) ☐ [illegible] ☐ child custody ☐ visitation (parenting time) as [illegible]
☐ Form FL-305 ☐ Form FL-311 ☐ Form FL-312 ☐ Form [illegible]
☐ Form FL-341(D) ☐ Form FL-341[illegible] ☐ [illegible]
(2) ☐ As follows *(specify)*: ☐ Attachment 2b

c. The orders that I request are in the best interest of the children because *(specify)*: ☐ Attachment 2c

**FL-300**

| | |
|---|---|
| PETITIONER: BRIAN ROSENLUND<br>RESPONDENT: CRYSTAL ROSENLUND<br>OTHER PARENT/PARTY: | CASE NUMBER<br>18STFL03527 |

2. d. ☐ This is a change from the current order for ☐ child custody ☐ visitation (parenting time).
   (1) ☐ The order for legal or physical custody was filed on *(date)*: . The court ordered *(specify)*:

   (2) ☐ The visitation (parenting time) order was filed on *(date)*: . The court ordered *(specify)*:

☐ Attachment 2d.

3. ☐ **CHILD SUPPORT**
   **(Note: An earnings assignment may be issued.** See *Income Withholding for Support* (form FL-195)**)**
   Monthly amount ($) requested (if not by guideline)

   ☐ Attachment 3a.

   b. ☐ I want to change a current court order for child support filed on *(date)*:
   The court ordered child support as follows:

   ... (form FL-150) or I meet the income requirements to file form FL-155

   ☐ Attachment 3c.

4. ☒ **SPOUSAL OR DOMESTIC PARTNER SUPPORT**
   Note: An earnings assignment may be issued ...

   b. ☐ This request is to modify (change) spousal or partner support ...
   I have completed ...

| | |
|---|---|
| **PETITIONER:** BRIAN ROSENLUND<br>**RESPONDENT:** CRYSTAL ROSENLUND<br>**OTHER PARENT/PARTY:** | **CASE NUMBER:**<br>18STFL03527 |

5. ☐ **PROPERTY CONTROL** ☐ I request temporary emergency orders

**a. The ☐ petitioner ☐ respondent ☐ other parent/party be given exclusive** temporary use, possession, and **control of the following property that we ☐ own or are buying ☐ lease or rent** (specify):

b. ☐ petitioner ☐ respondent ☐ other parent/party be ordered to make the following payments on debts while the order is in effect:

Pay to: ____________________ For: ______________ Amount: $ __________ Due date: __________

Pay to: ____________________ For: ______________ Amount: $ __________ Due date: __________

Pay to: ____________________ For: ______________ Amount: $ __________ Due date: __________

Pay to: ____________________ For: ______________ Amount: $ __________ Due date: __________

c. ☐ This is a change from the current order for property control filed on (date):

d. **Specify in Attachment 5d** the reasons why the court should make or change the property control orders.

6. ☐ ATTORNEY'S FEES AND COSTS

I request attorney's fees and costs, which total (specify amount): $ __________ . I filed the following to support my request:

a. ☐ An Income and Expense Declaration (form FL-150)

b. ☐ A Request for Attorney's Fees and Costs Attachment (form FL-319) or a declaration that addresses the same factors

c. ☐ A Supporting Declaration for Attorney's Fees and Costs Attachment (form FL-158) or a declaration that addresses the same factors

7. ☐ OTHER ORDERS REQUESTED (specify): ☐ Attachment 7.

... statutory interest, and issue appropriate enforcement orders pursuant to Family Code section 290. I further request that the court enter a specific arrears balance after crediting any payments proven by receipt ...

8. ☐ **TIME FOR SERVICE / TIME UNTIL HEARING** I urgently need:

a. ☐ To serve the Request for Order no less than (number): days before the hearing.

b. ☐ The hearing date to be sooner than 16 court days from the date of filing.

c. I need the order because (specify):

9. ☒ **FACTS TO SUPPORT** the orders I request are listed below. The facts in support **cannot be longer than 10 pages**, unless the court gives permission.

☐ Facts in support of the orders requested are attached (Attachment 9).

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date: 3 JUNE 2026

Crystal G. Rosenlund ______________________
(TYPE OR PRINT NAME)

[signature] ______________________
(SIGNATURE OF APPLICANT)

Requests for Accommodations

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to www.courts.ca.gov/forms for Request for Accommodations by Persons With Disabilities and Response (form MC-410). (Civ. Code, § 54.8.)

REQUEST FOR ORDER

CRYSTAL ROSENLUND
1916 Rockefeller Lane, Unit 7
Redondo Beach, CA 90278
(310)697-9722
crystalrosenlund@icloud.com
In Pro Per

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

BRIAN ROSENLUND,
Petitioner,
vs.
CRYSTAL ROSENLUND,
Respondent

Case No.: 18STFL03527

ATTACHMENT 9

DECLARATION OF CRYSTAL ROSENLUND RE: SPOUSAL SUPPORT ARREARS

I, Crystal Rosenlund, declare:

1. I am the Respondent in this action and make this declaration in support of my Request for Order seeking determination and enforcement of unpaid spousal support arrears, including statutory interest.
2. [illegible]
3. [illegible]
4. [illegible]

- December 1, 2021: $7,500
- January 1, 2022: $7,500
- February 1, 2022: $7,500
- March 1, 2022: $7,500
- April 1, 2022: $7,500
- May 1, 2022 (final one-half month payment): [illegible]

5. The unpaid spousal support principal totals approximately $41,250.00.
6. Under California law, unpaid support obligations accrue statutory interest at the legal rate of 10 percent per annum.
7. Respondent calculates unpaid spousal support principal in the amount of $41,250.00, plus estimated statutory interest through June 3, 2026 in the amount of $17,810.97, for a total estimated amount due of $59,060.97. This calculation uses 10% simple annual interest and is subject to Court review, audit, and any correction required by law.
8. On May 12, 2026, the Court found Petitioner in contempt on 20 counts for willful failure to pay court-ordered child support obligations in this matter.
9. I respectfully request that the Court determine the amount of unpaid spousal support arrears owed, including statutory interest, and issue appropriate enforcement orders pursuant to Family Code section 290.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: 3 JUNE 2026

Crystal G. Rosenlund

CRYSTAL G. ROSENLUND
Respondent, In Pro Per

FL-420

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state Bar number, and address) or GOVERNMENTAL AGENCY (under Family Code, §§ 17400, 17406):
CRYSTAL ROSENLUND
1916 Rockefeller Lane, Unit 7
Redondo Beach, CA 90278

TELEPHONE NO.: (310)697-9722 FAX NO. (Optional):
E-MAIL ADDRESS (Optional): crystalrosenlund@icloud.com
ATTORNEY FOR (Name): In Pro Per

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: 111 NORTH HILL STREET
CITY AND ZIP CODE: LOS ANGELES 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

PETITIONER/PLAINTIFF: BRIAN ROSENLUND

RESPONDENT/DEFENDANT: CRYSTAL ROSENLUND

OTHER PARENT:

**DECLARATION OF PAYMENT HISTORY**

CASE NUMBER: 18STFL03527

1. Declaration of *(name)*: CRYSTAL ROSENLUND
2. Based on my records or my recollection, I declare that the information on the attached pages showing the amounts ordered and the amounts paid are true and correct for the following obligations *(check all that apply)*:
   - a. ☐ Child support
   - b. ☑ Spousal support
   - c. ☐ Family support
   - d. ☐ Medical support
   - e. ☐ Unreimbursed medical expenses
   - f. ☐ Unreimbursed child care expenses
   - g. ☐ Other *(specify)*:
3. Number of pages attached: ________

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3 JUNE 2026

CRYSTAL G. ROSENLUND
(TYPE OR PRINT NAME)

▶ Crystal G. Rosenlund
(SIGNATURE OF DECLARANT)

**SUPPORT ARREARAGE SUMMARY**

This summary is for arrearage for the periods specified in the attached pages.
Interest is calculated through *(specify date)*:

| | Principal: | Interest *(optional)*: | Total Arrearage: |
|---|---|---|---|
| CHILD SUPPORT: | $ | $ | $ |
| SPOUSAL SUPPORT: | $41,250.00 | $17,810.97 | $59,060.97 |
| FAMILY SUPPORT: | $ | $ | $ |
| MEDICAL SUPPORT: | $ | $ | $ |
| UNREIMBURSED MEDICAL EXPENSES: | $ | $ | $ |
| UNREIMBURSED CHILD CARE EXPENSES: | $ | $ | $ |
| OTHER *(specify)*: | $ | $ | $ |

**NOTICE: Interest that is not calculated is not waived**

Date: 3 JUNE 2026

CRYTAL G. ROSENLUND
(TYPE OR PRINT NAME)

Submitted by:

▶ Crystal G. Rosenlund
(SIGNATURE)

Details of the arrearage statement, consisting of *(specify number)* ______ pages, are attached.

| PETITIONER/PLAINTIFF: BRIAN ROSENLUND<br>RESPONDENT/DEFENDANT: CRYSTAL ROSENLUND<br>OTHER PARENT: | CASE NUMBER:<br>18STFL03527 |
|---|---|

**PAYMENT HISTORY FOR** *(check one)*:

☐ Child ☑ Spousal ☐ Family ☐ Medical ☐ Unreimbursed child care
☐ Unreimbursed medical ☐ Other *(specify)*:

| | Year 2021 | | Year 2022 | | Year | |
|---|---|---|---|---|---|---|
| | AMOUNT ORDERED | AMOUNT PAID | AMOUNT ORDERED | AMOUNT PAID | AMOUNT ORDERED | AMOUNT PAID |
| January | | | $7,500.00 | $0.00 | | |
| February | | | $7,500.00 | $0.00 | | |
| March | | | $7,500.00 | $0.00 | | |
| April | | | $7,500.00 | $0.00 | | |
| May | | | $3,750.00 | $0.00 | | |
| June | | | | | | |
| July | | | | | | |
| August | | | | | | |
| September | | | | | | |
| October | | | | | | |
| November | | | | | | |
| December | $7,500.00 | $0.00 | | | | |
| TOTAL | $7,500.00 | $0.00 | $33,750.00 | $0.00 | | |

| | Year | | Year | | Year | |
|---|---|---|---|---|---|---|
| | AMOUNT ORDERED | AMOUNT PAID | AMOUNT ORDERED | AMOUNT PAID | AMOUNT ORDERED | AMOUNT PAID |
| January | | | | | | |
| February | | | | | | |
| March | | | | | | |
| April | | | | | | |
| May | | | | | | |
| June | | | | | | |
| July | | | | | | |
| August | | | | | | |
| September | | | | | | |
| October | | | | | | |
| November | | | | | | |
| December | | | | | | |
| TOTAL | | | | | | |

FL-490

| | |
|---|---|
| PETITIONER: BRIAN ROSENLUND<br>RESPONDENT: CRYSTAL ROSENLUND<br>OTHER PARTY: | CASE NUMBER:<br>18STFL03527 |

# APPLICATION TO DETERMINE ARREARS

Attachment to *Request for Order* (form FL-300)

☐ **Child support** ☒ **Spousal or partner support** ☐ **Family support** ☐ **Medical support**
☐ **Unreimbursed expenses** ☐ **Unreimbursed medical expenses** ☒ **Other** ***(specify):***

1. I ask that the amount of past due support payments (arrears) be decided in this case because *(check all that apply):*
   a. ☐ I have already paid ☐ some ☐ all of the support ordered. Proof of payment is attached.
   b. ☐ The children for whom support is to be paid were living with me full time for the period from:
   to: . I provided all of their support during that period. I am attaching a detailed declaration explaining these facts and supporting documentation, including any proof that the children were living with me.
   c. ☐ I could not pay child support because on or after September 27, 2022, I was confined against my will for more than 90 days in a row in jail, prison, juvenile detention, a mental health facility, or other institution *(attach proof).*
      (1) I was confined during the following dates:
         (a) Start date: (b) Release date:
         ☐ Additional dates of confinement are listed on an attached page. *(Form MC-025 may be used for this purpose.)*
      (2) I had no ability to pay child support while I was confined.
   d. ☐ I could not pay child support because from October 8, 2015, through December 31, 2019, or January 1, 2021, through September 26, 2022, my child support order was entered or modified, and I was confined against my will for more than 90 days in a row in jail, prison, juvenile detention, a mental health facility, or other institution *(attach proof).*
      (1) I was confined during the following dates:
         (a) Start date: (b) Release date:
         ☐ Additional dates of confinement are listed on an attached page. *(Form MC-025 may be used for this purpose.)*
      (2) I had no ability to pay child support while I was confined.
      (3) I was *not* confined for
         (a) Domestic violence against the other parent or our child; or
         (b) Failing to pay a child support order.
   e. ☒ Other *(specify):* Petitioner requests determination of unpaid spousal support arrears under the November 17, 2021
2. ☐ I have previously asked the other parent for payment and provided the other parent with an itemized statement of the unreimbursed ☐ childcare expense ☐ medical expense. *(Attach copies of all bills being claimed and proof of any payments that you have made on these bills.)*
3. ☐ I request the other person pay my attorney's fees and costs. My *Income and Expense Declaration* (form FL-150) is attached.
4. I have attached *(check all that apply):*
   a. ☒ a *Declaration of Payment History* (form FL-420).
   b. ☒ a *Payment History Attachment* (form FL-421).
   c. ☒ Other *(specify):* Attached declaration, copy of November 17, 2021 judgment, and arrears/interest calculation chart
5. Facts in support of the relief requested are *(specify):*

   ☑ contained in the attached declaration.

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: 3 June 2026

Crystal G. Rosenlund ▶ Crystal G Rosenlund
(TYPE OR PRINT NAME) (SIGNATURE OF DECLARANT)

**NOTICE:** This form must be attached to *Request for Order* (form FL-300).
For help completing this form, talk to the family law facilitator or self-help center in your county.

*NOT A COURT ORDER*

# Exhibit G

## Contractor Proposals for Bathroom Renovation and Flooring Work
## November 19, 2021 and January 12, 2022

**Phill 4 Hire**
1637 Haynes Lane
Redondo Beach, CA 90278
(ph) 310-623-0805
Phill4hire@yahoo.com

## QUOTE 0243 — 19 NOVEMBER 2021

| TO | SHIP TO | INSTRUCTIONS |
|---|---|---|
| Crystal | 1916 Rockefeller unit 7<br>Redondo Beach | (310) 697 9722 |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| Demo | Demo one master bathroom- demo drywall, tub, floors, closet, and vanity unit. Remove everything down to the studs. | | $1,200 |
| Framing | Remove one 6' wall and reframe 2'. Framing will include a 32"door. Install one window area to add piece of glass. | | $780 |
| HVAC | Relocate ducting/HVAC into the ceiling | | $450 |
| Shower pan | Install 2x4 pressure treated wood to make a 5x6 dam/ shower pan. Install 2x12 pressure treated wood around the studs for hot mop. Hot mop and test for any water leaks. | | $1,100 |
| Electrical | | | ??? |
| Plumbing | | | ??? |
| Drywall | Rehang drywall in master bathroom on the areas where drywall was removed. Drywall will be a level 4. Skim coat ceiling to a level 4 to match walls. | | $2,200 |
| Tiling | Plum and level 3 walls where the shower/tub will be installed. Install Hardie board on the floors and walls after it has been leveled. Tile 3 walls from floor to ceiling in shower/tub area, tile floor, and shower pan. (Note: in this price tiling is only basic tiling for example subway, 2x3, or square tiling. | | $5,800 |
| Painting | Prime and paint all new drywall | | $450 |
| Installing | Install vanity unit, toilet, hardware, and countertop | | $1,900 |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| Materials | Basic materials are included in this price. Example: lumber, drywall, mud, Hardie board, thinset, grout, and nails. Fixtures, vanity unit, tile, countertop, lights, and any hardware are not included in this pricing. | | |

| | |
|---|---|
| SUBTOTAL | $13,880 |
| MATERIALS | |
| DUMP FEES | $1,500 |
| TOTAL COST | **$15,380.00** |

Thank you for your business!

Phill 4 Hire
1637 Haynes Lane
Redondo Beach, CA 90278
(ph) 310-623-0805
Phill4hire@yahoo.com

| QUOTE 0243 | 12 JANUARY 2022 |
|---|---|

| TO | SHIP TO | INSTRUCTIONS |
|---|---|---|
| Crystal | 1916 Rockefeller unit 7<br>Redondo Beach | (310) 697 9722 |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| Demo | Demo one master bathroom- demo drywall, tub, floors, closet, and vanity unit. Remove everything down to the studs. | | $1,200 |
| Framing | Remove one 6' wall and reframe 2'. Framing will include a 32"door. Install one window area to add piece of glass. | | $780 |
| HVAC | Relocate ducting/HVAC into the ceiling | | $450 |
| Shower pan | Install 2x4 pressure treated wood to make a 5x6 dam/ shower pan. Install 2x12 pressure treated wood around the studs for hot mop. Hot mop and test for any water leaks. | | $1,100 |
| Electrical | Rewire master bathroom. Install (2) exhaust fans (1) in the toilet and other above tub, install (3) power points (GFI) (1) in toilet for bidet and (2) for Jack and Jill sinks. Install (4) 4" can lights (3) above the sinks and (1) above the shower and change out existing switch to a 3 switch J-box.<br>Materials are included in this price | | $1,200 |
| Plumbing | Relocate toilet to the other side of bathroom 17" then eliminate old toilet drain and frame up drop down ceiling, rough-in 1 ½ drain pipe for shower and tub with a vent, run hot and cold water line to shower and tub, relocate sink drain and water lines to new location, faucets will be wall mounted. Install all hardware after rough plumbing has been done.<br>Materials are included in this price | | $6,300 |
| Drywall | Rehang drywall in master bathroom on the areas where drywall was removed. Drywall will be a level 4. Skim coat ceiling to a level 4 to match walls. | | $2,200 |
| Tiling | Plum and level 3 walls where the shower/tub will be installed. Install Hardie board on the floors | | $5,800 |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| | and walls after it has been leveled. Tile 3 walls from floor to ceiling in shower/tub area, tile floor, and shower pan. (Note: in this price tiling is only basic tiling for example subway, 2x3, or square tiling. | | |
| Painting | Prime and paint all new drywall | | $450 |
| Installing | Install vanity unit, toilet, hardware, and countertop | | $800 |
| Materials | Basic materials are included in this price. Example: lumber, drywall, mud, Hardie board, thinset, grout, and nails. Fixtures, vanity unit, tile, countertop, lights, and any hardware are not included in this pricing. | | |

| | |
|---|---|
| SUBTOTAL | $20,280 |
| MATERIALS | |
| DUMP FEES | $500 |
| **TOTAL COST** | **$20,780.00** |

Thank you for your business!